No. 2504

G. C. HOPKINS *v.* JACK PARTRIDGE.

1. SALE OF UNPICKED COTTON.—See facts held sufficient evidence to show a completed sale of cotton in the field unpicked.
2. SAME.—The parties to the contract of sale were in the cotton field owned by the vendor. They agreed upon the sale of all the cotton crop on the plantation. The crop was turned over by the vendor to the vendee. Vendor agreed to pick and haul the cotton to a designated gin; the vendee agreeing to haul the ginned cotton, at his own expense, to a designated market. The market price of the cotton was then to be credited upon the notes of the vendor to the vendee for the purchase money of the land upon which the cotton was raised. *Held*, that a subsequent attachment could not hold the cotton against the vendee, there being no evidence or charge of fraud.

APPEAL from Camp. Tried below before the Hon. W. P. McLean.

The opinion gives the facts.

*Sheppard & Thompson*, for appellant, cited Sayles' Treatise, edition of 1882, section 242; Benjamin on Sales, sections 400, 402, 415; Morgan v. Taylor, 32 Texas, 363; Cleaveland v. Williams, 29 Texas, 204; Woods v. Halff, Weis & Company, 44 Texas, 634; Allen Brothers v. Melton, 64 Texas, 218.)

*Ed. A. King,* for appellee, cited, Blanton v. Langston, 60
Texas, 49; Brewer v. Blanton, 66 Texas, 532; White v. Jacobs,
66 Texas, 464; Cleaveland v. Williams, 29 Texas, 211; 1 White
& Will., Texas, 160, section 927.

WALKER, ASSOCIATE JUSTICE.  This is a controversy as to
the ownership of a cotton crop grown by one Quash Reed, un-
der whom both parties claimed.

The burden of proof was upon appellee, and his right, what-
ever it is, was prior to that of appellant.

The testimony to the alleged sale by Reed to Partridge is as
follows:  Partridge testified:  "Quash Reed was owing me for
a tract of land and I held three notes of his—two for four bales
and one for five bales of lint cotton—as a consideration for said
land.  All of these notes were past due.  About four weeks
before said levy (by appellant) I went over to where Reed was
gathering cotton.  He had picked then about two thousand
pounds of seed cotton, and about fourteen acres on said farm
was unpicked.  A part of this cotton was gathered and put in
Reed's smoke house, on said farm; part was gathered and put
in a cotton pen in the field.  I bought all of said cotton in said
smoke house and pen, and all the ungathered cotton—the same
being about fourteen acres of cotton which had been cultivated
by said Reed.  I promised to give the said Reed the market
price for said cotton at Pittsburg.  The cotton had been badly
handled, was trashy and dirty, and the lint from the same was
at that time worth seven cents per pound at Pittsburg, Texas,
but we did not agree on that.  Quash Reed turned over the
said ungathered and gathered cotton then and there.  Reed
accepted my proposition and then and there sold me said cot-
ton, and agreed further to pick out the balance of said cotton
and haul all of the same over to Baily's gin, the same being
close by.  I told Reed that, when the said cotton was hauled
over to Baily's gin and ginned up, I would haul the same over
to the town of Pittsburg, Texas, and when the same was
weighed and the number of pounds and price ascertained in
Pittsburg by the market price thereof, I would give the proper
credit on his said land notes.  All of which I and the said Reed
then and there mutually agreed.  The cotton in the said field
and in the smoke house and pen were in the same condition
when I bought it as when the levy was made by the officer in
favor of the plaintiff and against the said Reed."

Quash Reed testified: "I know defendant (Partridge). I was living on defendant's place at the time of the levy of the attachment in this suit. About four or five weeks before the date of said levy I had sold my entire crop of cotton grown on the said defendant's farm. There was about twenty acres un-gathered and about two thousand pounds picked out in my smoke house and cotton pen on said farm and located in said field. Defendant came over where the cotton was, and I turned over the same to defendant. I agreed to pick out the balance of said cotton and haul it over to Baily's gin, near by. I agreed to take the Pittsburg, Texas, market price of cotton. Defendant agreed that when I had hauled the said cotton to the said gin that he, defendant, would haul the same to Pitts-burg, Texas, and have the same weighed, and as soon as the market price could be ascertained, he would place the pro-ceeds on the said land notes." The value of the cotton was agreed, in this case, to be one hundred dollars.

The assignments of error attack the sufficiency of the testi-mony to show a complete sale of the cotton, (1) because the transaction did not include a delivery of possession; (2) there was work to be done upon the cotton, preparing for delivery; (3) no price was fixed, or could be, until after it was taken to market; (4) because the cotton, being found in Reed's posses-sion, was subject to the attachment.

It would seem that if the parties to the contract about the cotton are to be believed, all the objections urged were satis-fied. They testified clearly to a change of ownership. (Benj. on Sales, secs. 308, 309.)

Both parties to the contract state the fact that the entire cot-ton crop was sold by Reed to Partridge. There was, then, no necessity for anything further to ascertain what was sold. (Cleaveland v. Williams, 29 Texas, 204; 44 Texas, 634; 64 Texas, 218; 69 Texas. 132; Benj. on Sales, secs. 313–317.)

Both testify that the cotton was turned over to Partridge at the time. Partridge saying: "Reed turned over the said un-gathered and gathered cotton then and there." Reed testified: "Defendant came over to where the cotton was, and I turned over the same to defendant." From this the possession, so far as they could stipulate, was in Partridge. (Brewer v. Blanton, 66 Texas, 532; Benj. on Sales, sec. 3.)

As to the price, "the Pittsburg market price was to be taken." Reed was owing Partridge for the land on which the

cotton was grown, largely in excess of the value of the crop. Reed wished the cotton used to pay on Partridge's claim. No fraud is suggested in the dealings between them. It would seem that under these circumstances the price could be ascertained with certainty. (Blanton v. Langston, 60 Texas, 150.)

Reed agreed to pick that remaining in the field and haul all of the cotton to Bailey's gin. Had Reed failed to do this, his vendee could have taken the cotton as it was. It was his by contract, and the possession had been turned over to him. The failure on Reid's part to perform his agreement to pick the cotton remaining in the field, and to haul all of it to Bailey's gin, could not have defeated the right of his vendee to the cotton after its sale and delivery by Reed to his vendee. (Brewer v. Blanton, 66 Texas, 533.)

Under our statutes, the sale could as well be made by parol as in writing. That the possession remained in Reed was evidence of fraud, which, however, could be explained, if the transfer had been attacked as fraudulent.

No charge or suggestion of fraud is made against Reed, in selling to Partridge. That plaintiff did not know of the sale at time of his levy of attachment, did not render the levy good against the property of Partridge, unless the sale be attacked for fraud. Good faith on the part of plaintiff in making the seizure did not confer title upon him under the attachment, if the property did not belong to the defendant in attachment. (Dodd & Co. v. Arnold, 28 Texas, 100.)

As the court below passed upon the credibility of the witnesses, and as their testimony is sufficient to support the judgment, it will be affirmed.

*Affirmed.*

Opinion delivered October 30, 1888.