### W. C. Irvin v. S. V. Edwards, Sheriff, Etc.

No. 703. Decided November 14, 1898.

**Sale—Future Delivery—When Title Passes.**

See contract for sale of all the beef cattle out of a large stock, to be delivered in shipping pens for market in the future and held and cared for by the vendor in the meantime, and paid for as delivered at a fixed price per head, a partial payment being made in advance, held to pass the title to the vendee from the date of the contract, so that such cattle were not thereafter liable to taxation as property of the vendor.

Error to the Court of Civil Appeals for the Fourth District, in an appeal from La Salle County.

Irvin brought suit to restrain the sheriff from collecting certain taxes and obtained injunction, which was perpetuated by the trial court, but on appeal by defendant was dissolved. Thereupon Irvin obtained writ of error.

*E. R. Lane*, for plaintiff in error (*Lane & Hicks* filed brief on appeal). Delivery of personal property or the payment of cash therefor is not necessary to the passing of title. As soon as a bargain is struck of

specific personal property the sale is absolute without actual payment or delivery, and the property and risk of accident is in the purchaser. Newmark on Sales, secs. 76, 78; Tied. on Sales, sec. 84; Brewer v. Blanton, 66 Texas, 532; 5 Field's Lawyers' Briefs, sec. 292, p. 193; 21 Am. and Eng. Enc. of Law, pp. 476-481, and notes; Cleveland v. Williams, 29 Texas, 208-212.

The intention of the parties to a contract governs its construction, and should be gathered from a consideration of the whole instrument together with the circumstances preceding and following its execution and the understanding or construction of the parties. Horne v. Puckett, 22 Texas, 205; Hudson v. Wilkinson, 45 Texas, 445; Loving v. Milliken, 59 Texas, 423; Miller v. Yturria, 69 Texas, 549; McHugh v. Gallagher, 1 Texas Civ. App., 201.

The intention of parties to a contract being a question of fact, where on appeal there is no statement of facts showing the evidence adduced below, the finding of the trial court is conclusive. Dewees v. Hudgeons, 1 Texas, 192; Joseph v. Cannon, 32 S. W. Rep., 241; Gouhenant v. Anderson, 20 Texas, 459.

*Covey C. Thomas* and *C. A. Davies*, for defendant in error.—In order for a vendor to transfer the absolute title to personal property, there must needs be nothing left for him to do or perform which enters into or becomes a part of the consideration of such agreement or contract for sale, and title does not pass to a purchaser until the seller has complied with and performed all conditions precedent required of him by the contract. Anson on Contract, pp. 2, 4, 6, 11, 12, 23, 25, 32, 33, 48, 332, 338, 356, 360, 361, 369, 374, 390, 391; Tied. on Sales, secs. 205, 206, 207, 210, 211, 214, 218, 34, 38, 41, 50, 52, 53, 83, 84, 85, 87, 88, 94, 113, and authorities there cited; Wells v. Littlefield, 59 Texas, 556.

The intention of the parties to a contract of sale can only be arrived at by a consideration of the whole contract, and said alleged bill of sale should not be construed in a separate and segregated form, when the conditions and obligations precedent imposed upon both parties refer alike to all property therein described and contracted to be sold. Anson on Contracts, 327, 328, and authorities there cited; Reed v. Insurance Co., 95 U. S., 23.

The acceptance by the purchaser of the cattle offered for sale is expressly negatived in the clause of the said contract of sale that said W. H. Jennings, Jr., was to proceed to the plaintiff's ranch, after ten days notice to plaintiff, and was to classify, pass upon, and accept such cattle as the plaintiff (the vendor) would then be required to deliver at the shipping pens at Cotulla.

The trial court erred in construing the contract of sale to be executed, for the reason that a special stipulation is contained therein that all of said steers or beeves should be merchantable and marketable in the spring of 1895, which said condition precedent could not possibly be ascertained before the said spring of 1895, and the same to be merchant-

able and marketable must be alive and in existence, which said fact could not possibly be ascertained before the time of delivery specified in said contract of sale; and further, for the reason that in case of the death of any of the said cattle alleged to have been conveyed in said contract of sale, under its express terms and tenor, the loss thereof would fall upon the vendor, W. C. Irvin, the plaintiff herein, and not upon the alleged purchaser, W. H. Jennings, Jr.

There were express conditions precedent to the passing of title contained in said contract of sale, and said conditions were expressly stipulated to be performed by the plaintiff herein, and vendor, W. C. Irvin; said conditions being as follows: 1. That he was to deliver said cattle to W. H. Jennings, Jr. 2. That he was to pasture and take care of all of said cattle, using proper and reasonable care in handling said cattle from the pasture to the shipping pens, and was to handle them with the care generally used in handling cattle fit for shipment to market for beef; and the performance of said conditions precedent could not possibly be ascertained before the spring of 1895, without which the sale could not possibly have become complete.   Robertson v. Hunt, 77 Texas, 323; Bank v. Emery, 78 Texas, 512; Allen Bros. v. Melton, 64 Texas, 218; Morgan v. Taylor, 32 Texas, 363; Gammage v. Alexander, 14 Texas, 414.

*C. C. Thomas* and *Jno. C. Townes* filed an argument in support of a motion for rehearing by defendant in error, which was overruled.

BROWN, ASSOCIATE JUSTICE.—W. C. Irvin sold to W. H. Jennings, Jr., all of the beef steers upon the ranch of the former and executed and delivered to Jennings the following bill of sale:

"*The State of Texas, County of Bexar.*—This memorandum of agreement made and entered into on this, the 18th day of September, 1894, by and between W. C. Irvin, of La Salle County, Texas, party of the first part, and W. H. Jennings, Jr., of San Antonio, Bexar County, Texas, party of the second part, witnesseth: That the said party of the first part has this day bargained and sold, and hereby agrees to bargain, sell, and deliver unto the party of the second part all of his steer beeves now located and hereafter to be kept in his pasture in the county of La Salle and State of Texas, which said steer beeves shall be in number about fifteen hundred (1500) head, more or less, and all of them shall, in the spring of 1895, be four years old and upwards.   No cattle herein sold shall include any cattle known as 'big jaws' or 'cripples.'

"Also, all of his steer cattle which shall be three years old in the spring of 1895, and being in number about two hundred (200) head, more or less, all of which shall be good merchantable steers.   Also, all the fat cows, bulls, and stags which the said Irvin can conveniently gather, of such character that they shall be fat and in good shipping

condition for beef. All of said cattle being in the following brands: SO side, hip, EUG side, hip, hip, V.K. side.

"In consideration of the above sale, said W. H. Jennings, Jr., has agreed and does hereby agree to pay to said W. C. Irvin for the said four-year-old steers, and older, the sum of eighteen ($18) dollars per head; for the said three-year-old steers the sum of thirteen ($13) dollars per head; and for the said cows, bulls, and stags, the sum of ten ($10) per head; and has this day paid upon such purchase money in cash, the sum of six thousand ($6000) dollars, the balance of said purchase money to be paid when the cattle shall have been delivered.

"The said W. C. Irvin agrees to pasture and care for all of said cattle from the present time up to the 15th day of June, 1895, and to deliver the same to the said W. H. Jennings, Jr., his heirs or assigns, in train-load lots in the shipping pens at Cotulla, Texas, if so desired by the said Jennings, upon ten days notice being given by said Jennings to said Irvin of the time at which said Jennings desires said cattle to be put in the shipping pens by said Irvin ready for shipment.

"That, in the application of the payments of said purchase money under this agreement, it is agreed that, as cattle are delivered, the said W. H. Jennings, Jr., shall pay unto the said W. C. Irvin the price herein-before stated for each head of cattle delivered, on the day on which they are delivered to him by said Irvin in the shipping pens at Cotulla, Texas; the $6000 to be applied as a payment upon the last delivery or deliveries of said cattle as hereinbefore provided for.

"It is further agreed and understood that, in the pasturing of the cattle and the care of them from this date until the date of their delivery, the said Irvin shall exercise proper and reasonable care, and, in handling said cattle from the pasture to the shipping pens, the said Irvin will handle them with the care generally used in handling cattle for shipment to market for beef.

"It is further agreed and understood by the parties hereto that the said W. H. Jennings, Jr., will, himself or by his agent, proceed to the pasture of the said Irvin and classify, pass upon, and accept the cattle to be delivered to him upon this contract, before the said Irvin shall be required to drive them or any of them from his pastures to the shipping pens at Cotulla, Texas. And it is further understood and agreed that the said Jennings shall only be required to accept such fat cows, bulls, and stags as may be in such condition as will warrant their being shipped to market as beeves.

"Witness our hands, this the 18th day of September, 1894.
                                        "W. C. IRVIN,
                                        "W. H. JENNINGS, JR."

Jennings paid, at the time, $6000 upon the purchase, and paid the balance upon delivery of the cattle, none of which were delivered, how-ever, until after the first of January, 1895. Irvin owned a ranch in La Salle County upon which he had at the time several thousand head of

cattle, and in 1895 he listed for taxation in said county all of the cattle that were upon his ranch on the first day of January, 1895, except twelve hundred head of steers which he had sold to W. H. Jennings. S. V. Edwards was the sheriff and tax collector of that county, and, by order of the commissioners court, placed upon the supplemental tax rolls of La Salle County for the year 1895 1200 head of steers as the property of W. C. Irvin, and assessed against the said steers tax amounting to $147, which has never been paid.

This suit was brought by W. C. Irvin against Edwards to restrain him from enforcing the collection of the said tax, and the District Court issued a temporary writ of injunction, which upon final hearing was perpetuated. The Court of Civil Appeals reversed the judgment of the District Court and dissolved the injunction.

The beef steers sold by Irvin to Jennings were sufficiently identified to pass title, and the language used in the first clause of the bill of sale clearly shows an intention that the title should then pass and vest in Jennings. The Court of Civil Appeals held that, construing the whole instrument, the intention thus manifested was shown not to exist in fact, but that the parties intended the title should not vest until delivery should be made. It is true that only a part of the purchase money was paid at the time, and the contract prescribed that the remainder of the purchase money should be paid in installments as the cattle should be delivered. This does not prove that the parties intended the title to remain in Irvin until delivery; it was not at all unusual in such transactions to so provide, but was a reasonable arrangement for completing the payments of the price.

The provisions of the contract whereby Irvin agreed and bound himself to pasture and care for the cattle to the 15th day of June, 1895, and to deliver them to Jennings upon notice from him, binding himself also to exercise reasonable and proper care in pasturing and caring for and in moving them from the pasture to the shipping pens, show that the steers had become the property of Jennings and Irvin was acting as the agent of the former in the care and handling of the stock. If the cattle belonged to Irvin, why should he contract with Jennings for the exercise of care in handling and managing property that belonged to himself? If Jennings was entitled only to such cattle as might be delivered to him by Irvin, a failure by Irvin to exercise proper care in pasturing and driving them could have been of no interest to Jennings, and a service to be performed by Irvin for his own benefit would have been a novel subject of contract between those parties. Title to the steers passed to Jennings at the time the bill of sale was delivered.

The 1200 beef steers which were assessed in the name of the plaintiff in error were not his property on the first day of January, 1895, and he was not liable for the taxes so assessed. The Court of Civil Appeals erred in reversing the judgment of the District Court and in rendering judgment dissolving the injunction which had been previously issued.

It is therefore ordered that the judgment of the Court of Civil Appeals be reversed and that the judgment of the District Court be affirmed.

*Judgment of Court of Civil Appeals reversed.*

*Judgment of District Court affirmed.*