FARMERS' RICE MILLING CO., INC., v. STANDARD RICE CO. (No. 713-4278.)

(Commission of Appeals of Texas, Section A. Nov. 4, 1925.)

1. Sales ⬯199—Passing of title determined by intention.

Intention of parties is criterion by which passing of title is to be determined.

2. Sales ⬯199 — Intention as to passing of title, when disclosed by terms of contract, given effect.

Intention of parties as to passing of title, when disclosed with certainty by terms of written contract, will be given effect.

3. Sales ⬯199—When title passes stated.

When parties to a proposed sale of specific personal property execute a written contract, by which the property is sold to buyer and nothing remains to be done to identify the property, and contract expressly requires seller to hold possession without cost to buyer pending a future delivery, and nothing in the contract is inconsistent with immediate passage of title to buyer, the sale as between parties becomes executed upon the execution of the contract, and title passes to buyer at that time.

4. Sales ⬯202(1)—Provision for methods of payment held not to affect passing of title.

Provision for alternative methods of payment held not to affect provision showing intention of parties to pass title on execution of contract.

5. Sales ⬯300—Seller may have lien for price, and right to retain possession, notwithstanding previous passing of title.

Seller may have lien to secure payment of price, and right to retain possession until payment, notwithstanding previous passing of title to buyer.

6. Sales ⬯202(6)—Taking of shippers' order bill of lading by seller, and allowing inspection to buyer, held not to affect passing of title.

The taking of shippers' order bill of lading by the seller, when it shipped the rice, and the making of a notation thereon allowing inspection of the rice by the buyer upon its arrival at destination, held not to affect the title which theretofore passed to buyer.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit by the Farmers' Rice Milling Company, Inc., against the Standard Rice Company. Judgment of district court for defendant was affirmed by the Court of Civil Appeals (264 S. W. 276), and plaintiff brings error. Judgment of Court of Civil Appeals and of district court reversed, and judgment rendered for plaintiff.

Grover Rees and Bryan, Dyess & Colgin, all of Houston, for plaintiff in error.

Andrews, Streetman, Logue & Mobley, of Houston, for defendant in error.

HARVEY, P. J. The plaintiff in error, the Farmers' Rice Milling Company, Inc., which will be herein designated as the Farmers' Company, is a Louisiana corporation with home office and place of business at Lake Charles, La.

The defendant in error, the Standard Rice Company, which will be herein designated as the Standard Company, is a Texas corporation, with home office and place of business in Houston, Tex., and a branch office in New York City.

During the month of April, 1920, the Farmers' Company had in storage in their warehouse at Bellevue, La., a specific lot of Blue Rose rice, which was distinctly segregated in the warehouse; and such company took a sample therefrom and forwarded it to their broker in New York for the purpose of making sale of the lot. The broker exhibited the sample to the agent of the Standard Company on April 14, 1920, and offered to sell said specific lot of rice to the latter company at 10 cents per pound f. o. b. cars at Bellevue, Calcasieu parish, La. The offer of the Farmers' Company was accepted by the Standard Company, and a contract covering the transaction was immediately drawn up in writing and executed by the Standard Company and the broker, subject to confirmation by the Farmers' Company. The terms of such contract having been communicated to the Farmers' Company at its home office, that company duly confirmed same on April 15, 1920, and thereupon the contract became binding on said respective companies. At the time of the execution of the contract there existed an embargo at the Gulf ports of indefinite duration, which, while it lasted, would prevent the shipment of the rice by water to New York, which fact was known to, and in contemplation of, the parties to such contract at the time of the execution of the contract. Said written contract, omitting formal and immaterial parts, reads as follows:

"Farmers' Rice Milling Company, Inc., hereby sells and agrees to deliver, and the under-

signed buyer hereby purchases and agrees to pay for the following merchandise: 819 pockets Blue Rose rice, No. 62, doubles for Standard Rice Milling Company, New York City. Draft dated April 15, 1920, less 1 per cent. if paid within 10 days. Sellers to allow buyers thirty days free storage and insurance. For the price and sum of 10 cents per pound. Shipment: Soon as embargo is lifted. Delivery: F. o. b. cars at Bellevue, Calcasieu parish, La. This written agreement is the complete agreement of the parties, and is not binding on seller until accepted and confirmed by wire or in writing."

This written contract bears the signatures of said broker and of the Standard Rice Company, Inc., as buyer, and also shows written confirmation thereof, signed by the Farmers' Rice Milling Company, Inc., bearing date April 15, 1920.

At the time of the execution of the above written contract, it was contemplated by the parties thereto that the rice would be shipped by water through a Gulf port to the Standard Company at New York as soon as the embargo was lifted. The embargo, however, continued in effect for several months, and while same still was in effect, the rice, under instructions from the Standard Company to the Farmers' Company, on suggestion of the latter company, was shipped by rail, on July 23, 1920, to New York. A shippers' order bill of lading was issued by the railroad company to the Farmers' Company, covering the shipment, and the latter company attached a draft thereto for the purchase price of the rice, and forwarded same to its agents in New York for delivery to the Standard Company when the draft was paid. The Farmers' Company made notation on the bill of lading, instructing the carrier to allow the Standard Company to inspect the rice on its arrival in New York. It may be also stated here that on April 15, 1920, the Farmers' Company drew a draft on the Standard Company for the purchase money and forwarded same to New York for payment, but such draft was never paid. When said contract of April 15, 1920, was executed, the Farmers' Company proceeded at once to procure insurance on said lot of rice and to hold same in storage in the segregated state it was, for the account of the Standard Company, and continued to so hold same until the rice was shipped out on July 23, as above stated.

The rice, at the time of the execution of said contract, and also at the time it was so shipped, was in good condition and in keeping with the sample by which the sale was made, but on its arrival in New York several weeks after shipment from Bellevue the rice was found to have been greatly damaged in transit. The Standard Company refused to pay the draft attached to the shippers' order bill of lading covering such shipment, and refused to accept said rice on its arrival in New York. The rice was thereupon duly sold for the account of the Standard Company, at a reasonable market price, and the net proceeds of the sale were, on October 8, 1920, applied by the Farmers' Company to the purchase price of the rice, leaving a net balance unpaid on such purchase price, on that date, of $5,670.46. For the latter amount, with legal interest from the last-named date, the Farmers' Company brought this suit against the Standard Company, because of its breach of said contract.

We have not undertaken to set out all the correspondence which passed between said parties subsequent to the execution of the written contract, since same becomes immaterial in view of the decision we have reached.

[1, 2] We are of opinion that the above-written contract evidences an executed sale. Considered in the light of the facts and circumstances existing at the time of its execution, and in contemplation of which the parties contracted, the terms of such contract, clearly and without ambiguity, show that the title or property in the rice passed to the Standard Company immediately upon the execution of the contract. Such terms show that the seller thereby sold, and that the buyer thereby purchased, the lot of rice which was then segregated and identified. The contract further shows that, in view of the existing water embargo, provision was made for the retention of possession of the rice by the seller as the bailee of the buyer, pending the lifting of the embargo. These provisions clearly show an intention on the part of both parties to the contract that upon execution of the contract the title to the rice should pass from the seller to the buyer. Such intention of the parties is the criterion by which the passing of the title is to be determined. And, when the terms of the written contract, as in this case, show such intention with certainty, when applied to the existing matters to which they relate, such intention will control and be given effect.

[3] When the parties to a proposed sale of specific personal property execute a written contract, by the terms of which the property is sold to the buyer, and the latter thereby buys the property; and nothing remains to be done to identify the property; and the terms of the contract expressly require the seller to hold possession of the property, without cost to the buyer, pending a future delivery; and nothing appears in the contract inconsistent with the immediate passage of the title in the property to the buyer— the sale, as between the seller and the buyer, becomes executed upon the execution of the contract, and the title in the property passes to the buyer at that time. Irvin v. Edwards, 92 Tex. 258, 47 S. W. 719; Cleveland v. Williams, 29 Tex. 204, 94 Am. Dec. 274; Boaz v. Schneider, 69 Tex. 128, 6 S. W. 402; Brewer v. Blarton, 66 Tex. 532, 1 S. W. 572.

[4] The provision in the contract here, reading, "draft dated April 15, 1920, less 1 per cent. if paid within ten days," relates only to the method and time of payment of purchase price, and in no wise indicates that the passage of title to the rice depends upon the payment of the purchase money as a condition precedent to the passing of the title to the buyer. Such expression is found by the trial court to mean:

"That the buyer, if he chooses, may pay the draft within ten days and take the 1 per cent. discount, or he may decline to pay the draft within ten days, and not take the discount, and await the arrival of the rice at destination."

Even so, the passing of the title to the rice at the time of the execution of the contract would nevertheless not be affected by such provision. In a case like this one, where the contract shows on its face an intention to pass the title to the property at the time of the making of the contract, such a provision with such a meaning would not be inconsistent with the provisions of the contract which show such intention. (Authorities supra.)

[5, 6] The taking of a shippers' order bill of lading by the Farmers' Company, when it shipped the rice, and the making of the notation thereon allowing inspection of the rice by the Standard Company upon its arrival in New York, had no effect on the title in the rice which had theretofore passed to the buyer. The seller had a lien on the rice to secure payment of the purchase money, and had the right to retain possession thereof till such payment was made, notwithstanding the title in the rice had previously passed to the buyer. Railway v. Browne, 27 Tex. Civ. App. 437, 66 S. W. 343. Any inference of the shippers' intention to reserve ownership in the rice, which might otherwise have been drawn from the form of the shipping contract with the carrier, is completely destroyed by the proved fact that the ownership of the rice was already in the buyer.

It appearing that the evidence showing the amount of plaintiff in error's damages to be $5,670.46, with 6 per cent. interest from October 8, 1920, is undisputed, and that the evidence of the case has been fully developed, we recommend that the judgment of the trial court and that of the Court of Civil Appeals be reversed, and that judgment be here rendered for plaintiff in error for his damages as above stated.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiff in error as recommended by the Commission of Appeals.