## TEXAS HAY ASS'N v. ANGLETON STATE BANK. (No. 756–4715.)

(Commission of Appeals of Texas, Section B. Feb. 23, 1927.)

1. Sales ⬿212—Under contract by grower to sell to hay association all hay grown during certain years, sale was complete when hay was stored in barn.

Under contract by grower to sell and convey all hay grown or to be grown during certain years sale was complete when hay was baled and stored in grower's barn, since it was not necessary to haul it to warehouse as stated in contract in order to complete sale.

2. Sales ⬿212—Contract to sell growing hay was sale when hay was stored, even though grower could mortgage crop upon notifying buyer.

Contract by grower to sell all hay grown to hay association was sale when hay was stored, even though contract provided that buyer could mortgage crop after advising with association, and that association should have certain rights as to its payment after mortgage was executed. .

**3. Sales ⚖══212—Contract to sell all hay grown was sale when hay was stored, even though contract permitted seller to sell neighbors what they needed.**

Contract by grower to sell hay association all hay grown by him during certain years was sale when hay was stored, even though buyer could use what he needed himself and sell his neighbors what they needed.

**4. Parties ⚖══29—That others had interest in attached hay was immaterial in suit between buyer and party attaching.**

That others who were not parties had interest in attached hay was immaterial in suit between claimant who had purchased hay and party attaching.

**5. Sales ⚖══212—Hay stored in warehouse of grower who had sold all hay grown to hay association could not be attached by one suing grower, since title had passed to association when hay was stored.**

Writ of attachment could not be levied against hay stored in warehouse of grower, who had contracted to sell to hay association all hay grown or to be grown, by one suing grower, since title had passed to association when hay was stored, even though contract provided that grower should haul it to warehouse.

Error to Court of Civil Appeals of First Supreme Judicial District.

Attachment by the Angleton State Bank against J. M. Turner and others, wherein the Texas Hay Association claimed the property attached. Judgment for claimant was reversed and judgment rendered (285 S. W. 941), and claimant brings error. Judgment of the Court of Civil Appeals reversed and that of the district court affirmed.

Bryan, Dyess, Colgin & Suhr, of Houston, for plaintiff in error.

Rucks & Enlow and Wilson & Follett, all of Angleton, for defendant in error.

POWELL, P. J. In the Court of Civil Appeals, the bank was plaintiff in error. It made a statement of the case in its brief in that court which was accepted by the hay association and declared by the court to be sufficient. That statement was as follows:

"This is an appeal from a judgment rendered by the district court of Brazoria county, Tex., in a statutory trial of right of property suit, involving the title to 220 tons of prairie hay.

"On December 8, 1922, a writ of attachment was issued in a suit styled 'Angleton State Bank v. J. W. Loper, Mrs. M. A. Loper, and J. M. Turner, No. 17594,' pending in the district court of Brazoria county, Tex., directing the sheriff or any constable of Brazoria county, Tex., to forthwith attach so much of the property of the defendants named in the writ as should be of value sufficient to make the sum of $1,233 and costs of suit. The writ was placed in the hands of the sheriff of Brazoria county, Tex., and was by him executed on December 12, 1922, by levying the writ upon 220 tons of prairie hay as being the property of J. M. Turner.

"On February 8, 1923, defendant in error made and presented to the sheriff its written affidavit claiming the above-mentioned hay, and at the same time made and presented to the sheriff its bond, with Hartford Accident & Indemnity Company as surety, in the sum of $4,840, the sheriff having valued the hay at $2,420, which bond was duly approved by the sheriff. On February 10, 1923, the sheriff, by virtue of such affidavit and bond, delivered the hay to defendant in error.

"The suit between the parties hereto having been docketed in the name of plaintiff in error, with defendant in error as defendant, thereafter the parties made up the issues between them, in writing, as follows:

"Plaintiff in error alleged the issuance of the writ of attachment, the levying of same on the hay, the execution and presentation by defendant in error of the bond and affidavit, the value placed by the sheriff on the hay, and the delivery of the hay, under and by virtue of the affidavit and bond, to defendant in error. Plaintiff in error further alleged that, at the time the writ of attachment was levied on the hay, J. M. Turner was the owner of and in possession thereof, and that by virtue of the levy plaintiff in error acquired an attachment lien upon the hay, and thereby became entitled to subject the hay and the proceeds thereof to the payment of its debt against Turner. Plaintiff in error further alleged that its attachment lien was prior and superior to any right, claim, or title of defendant in error, and prayed for judgment against defendant in error, and the surety on its bond, for the amount of its claim against J. M. Turner, together with 10 per cent. damages, and costs of court.

"Defendant in error alleged: That J. M. Turner was a member of the Texas Hay Association and a stockholder thereof; that the Texas Hay Association was and is a co-operative marketing association, organized and chartered under the laws of the state of Texas; that, at the time Turner became a member of the Texas Hay Association, he made and entered into a contract in writing with the association, wherein he bargained, sold, and conveyed to the association all of the hay grown, or to be grown, made or to be made, saved or to be saved, and stored and to be stored, or in any manner acquired by him during the years 1921, 1922 and 1923; that under this contract in writing the title to the hay when same was made and stored by Turner, passed to the association; that the hay embraced in this litigation was stored by Turner in his warehouse on his farm; that same was declared by Turner to the association; and that the association advanced thereon to him the sum of $3,900.97, and became the exclusive owner of all right, title, and interest in the hay, with the right to sell same and to account to Turner therefor at the average net sale price of all hay of similar grade and quality contained in the pool for the year 1921, 1922, or 1923, which same has been duly and truly accounted for by such association, and which has been accepted by Turner. Defendant in error prays that plaintiff in error take nothing by its suit, and that its title to the hay be in all things confirmed by the judgment of the court.

"Trial was had before the court, resulting, on September 29, 1924, in judgment in favor of

defendant in error. The suit is now properly before this honorable court for review."

The Court of Civil Appeals entered the following judgment:

"From these conclusions, it follows that the trial court's judgment must be reversed, and that judgment should here be rendered in favor of plaintiff in error against the defendant in error and the surety on its claimant's bond, Hartford Accident & Indemnity Company, for $1,-356.30, together with the legal interest thereon from February 9, 1923, until paid; it has accordingly been so ordered. Reversed and rendered." See 285 S. W. 941.

The Court of Civil Appeals sets out the material portions of the contract between the hay association and Turner. It states the controlling issue in the case as follows:

"In this court, as was done below, the bank contends that at the time the attachment was levied J. M. Turner was the owner of and in possession of the hay, which made it subject to the writ, while the hay association asserts that it was then the owner and in possession thereof, and for that reason the levy got the bank nowhere. The determination of that issue is all the appeal involves."

That court's answer to this issue has already been given by us. Against such answer, the hay association submits these assignments and propositions:

"Assignments of Error.

"1. The honorable Court of Civil Appeals erred in construing the contract existing between the Texas Hay Association and its various members thereof, and the one with J. M. Turner, and in holding under said contract the title to the hay, upon which levy of attachment was attempted, had not passed to and vested in the Texas Hay Association.

"2. The honorable Court of Civil Appeals erred in its construction of the opinion of the Supreme Court in the case of Texas Farm Bureau Cotton Association v. Stovall [113 Tex. 273] 253 S. W. 1101, in construing that said decision held that delivery was necessary to pass title.

"3. The honorable Court of Civil Appeals erred in ignoring the fact that the Texas Hay Association had paid J. M. Turner, under the provisions of his contract with it, $3 per ton upon each and every ton of hay delivered by Turner to said association; that Turner did this in lots of 100 tons at a time, and that this money was used by Turner to take and store the additional hay, which he in turn declared to the association and upon which he received payments of $3 per ton.

"First Proposition.

"The contract executed between Turner, as a member of the Texas Hay Association on the one part, and the Texas Hay Association, on the other part, was a contract of purchase and sale, and the title to the hay made by Turner under said contract, immediately upon same coming into existence, passed to and vested in the Texas Hay Association.

"Second Proposition.

"Under the contract between Turner and the Texas Hay Association all hay produced or acquired by Turner vested in the association when it came into existence and he declared same to the Texas Hay Association and received advancements of purchase money on it."

The Court of Civil Appeals correctly states that the contract in the instant case is "very similar" to the one under consideration by our Supreme Court, speaking through Chief Justice Cureton, in the case of Texas Farm Bureau Cotton Association v. Stovall, 113 Tex. 273, 253 S. W. 1101. But we think that court has incorrectly interpreted the holding in that case when it says that the Supreme Court, at least by implication, "held that the title of the grower to the cotton he was to sell and deliver did not pass to the association until after delivery."

The contracts in the two cases are almost identical, except that one related to cotton and the other to hay. The nature of the Stovall suit was stated by our Supreme Court as follows:

"This suit was instituted by the Texas Farm Bureau Cotton Association, a nonprofit co-operative agricultural association or corporation, organized under the Co-operative Marketing Act, Vernon's Texas Civil Statutes, 1922 Supplement, arts. 14½k to 14½yy. The purpose of the suit was to enjoin the defendant in error, Stovall, from delivering and selling his crop of cotton to parties other than the plaintiff in error, in violation of a contract alleged to have been made with the association, and to compel specific performance of this contract. On application for temporary injunction, the court after hearing the evidence sustained exceptions to the plaintiff in error's petition, and upon refusal to amend the cause was dismissed. An appeal was prosecuted to the Court of Civil Appeals for the Fifth District, which affirmed the judgment of the trial court. 248 S. W. 1109."

The court's conclusion in the case from which we have just quoted was as follows:

"For the various reasons assigned, we have concluded that none of the propositions urged against the enforcement of this contract are tenable; that the trial court erred in sustaining the exceptions to the plaintiff in error's petition, in holding that the contract was unilateral, uncertain in its terms, not susceptible of specific performance, and in dismissing the petition; and that the Court of Civil Appeals erred in affirming the judgment of the trial court."

In construing the general nature of the contract in the Stovall Case, in all essential respects similar to the one in the instant case, the court said:

"We do not find it necessary to determine whether this contract was one of ordinary sale and purchase or an agency contract. The fact that the association is created primarily for co-operative purposes, and not for profit, lends color to the theory that it is an agency contract. But when the statute is examined and the con-

tract analyzed, it is quite plain that in its essential aspects the contract is not one of agency as that term is ordinarily understood. The rule is that the primary test as to the character of a contract is the intention of the parties. 23 R. C. L. p. 1216, § 34.

"It is difficult to lay down any single rule or test as to what will or will not constitute a sale of property. The case next cited contains many annotations on the subject, but in reality each contract must be construed in accordance with its own terms and with the manifest intention of the parties. See D. M. Ferry & Co. v. Hall, L. R. A. 1917B, 620, and notes (188 Ala. 178, [66 So. 104]). In general it may be said that if it is manifest from the contract that it was intended title should pass and the price be paid; the transaction constitutes a sale. According to the contract before us, the association agrees to buy, and the grower agrees to sell and deliver cotton to the association. (Paragraph 2.) By paragraph 18 (b) of the agreement, 'the parties agree that this is a contract for the purchase and sale of personal property.' Other provisions in the contract show that it was the manifest purpose of the parties that the association should take title to the cotton delivered to it, and that defendant in error should lose all dominion over it.

"The cotton is to be delivered to the association without any provision for its return; the association is authorized to have the cotton handled, processed and stored; it is authorized to borrow money on, pool, and sell the cotton; in other words, the association is authorized to exercise all acts of ownership over the cotton after its delivery, subject only to the method prescribed for determining its price.

"The fact that the cotton is to be placed in a pool with the cotton of other growers, and the grower paid from the net proceeds of the pool, instead or from the net proceeds of his own cotton, clearly shows that the purpose was to pass title to the association. It is true that the grower at all times has a beneficial interest in the net proceeds of this pool, but in so far as the legal title to the cotton is concerned, and his dominion over it, it is clear that it passes from him. What remedies, if any, the grower might have, as against the cotton, in the event of a breach of the contract by the association, it is unnecessary to determine. It is sufficient to say that, in view of the statute, and the express language of the agreement declaring the instrument a contract of sale and purchase, we must regard it as such a contract in so far as the parties here are concerned. See the following cases: Columbia Carriage Co. v. Hatch, 19 Tex. Civ. App. 120, 47 S. W. 288; Williams v. Drummond Tobacco Co., 17 Tex. Civ. App. 635, 44 S. W. 185; Texas Brewing Co. v. Anderson (Tex. Civ. App.) 40 S. W. 737; Texas Brewing Co. v. Templeman, 90 Tex. 277, 38 S. W. 27."

The court went on to say, in the same case, that "a court of equity would not meet with any very serious difficulty in requiring the average owner to deliver his cotton after it was ginned."

In the case at bar, there was not only a sale of all the hay grown during these years, but there was an agreement as follows with reference to its delivery:

291 S.W.—54

"4 (a) All hay shall be delivered at the earliest reasonable time after making, to the order of the association, at the warehouse controlled by the association, or at the nearest public warehouse, if the association controls no warehouse in that immediate district; or by shipment as directed, to the association and by delivery of the indorsed warehouse receipts or bills of lading properly directed. * * *"

[1] When Turner had made this hay and baled it and stored it in his barn, it was "made." It was his duty to haul it to a warehouse as stated in the contract. That duty of the vendor did not have to be executed in order to make the sale complete. See Cleveland v Williams, 29 Tex. 204, 94 Am. Dec. 274; Hopkins v. Partridge, 71 Tex. 606, 10 S. W. 214; Wells v. Littlefield, 59 Tex. 556. The hay belonging to Turner was baled and easily identified. It belonged to the association. Turner had no right to sell it to the bank. The defendant in error bank had no right to subject this hay to the collection of its debt. This is the same rule laid down by our Supreme Court in the Stovall Case. It was held that Stovall could not sell his cotton after it was ginned and baled to any one but the association. The title had already passed to the association. The same thing is true here with reference to this baled hay. It not only could not be sold to the bank or subjected to its debt, but the association could have required Turner, upon specific performance, to deliver the hay to a warehouse, just as our Supreme Court held that Stovall could have been required to deliver his bales of cotton to that association.

[2] The Court of Civil Appeals says this contract was not a sale because Turner had the right to place a crop mortgage upon the whole of it while it was still growing, a thing which the court says he could not do if the property was not his own. The Court of Civil Appeals, earlier in its decision, sets out this mortgage provision in the contract. As we read it, Turner was not authorized, at his option, to mortgage his crop. The contract expressly provided that he must notify and advise with the association before entering into any such transaction, and if, after such conference, a mortgage should be executed, then the association should have certain rights as to its payment.

In more than one paragraph of the contract, Turner sold all the hay to the association. But in one paragraph we have this language:

"12. Nothing in this agreement shall be interpreted as compelling the maker to deliver any specified quantity of hay per year; but he shall deliver all the hay produced or acquired by or for him, save such as he may use or sell to his neighbors for their use."

[3] The Court of Civil Appeals lays much stress upon this last quoted provision. We do not think it shows that no sale was intended. It merely permitted Turner to sell

to his neighbors, out of all of his hay, what they needed to use. And he was permitted to use what he needed himself. This exception did not change the general nature of the contract as to the other hay. And the attached hay had not been sold to his neighbors for their use.

[4, 5] It is also seriously contended that others had an interest in this attached hay; that some of it belonged to others, etc. That is immaterial here. They are not parties to this suit. There is no pleading by Turner that some of it was reserved for his own use. There are but two parties to this suit on claimant's oath and bond. As between the bank and the hay association, the only parties to this suit, we are clearly of the view that the association does have title to the hay, just as was decreed by the district court. If other parties claim part of the hay which was attached, they may yet have their action, either for the hay, or for conversion as against the association. So far as the bank and the association were concerned, there was but one proper judgment in this case, and that was the one entered by the district court. In conclusion we would call attention to the fact that Turner had declared this hay to the association and gotten an advance of $3 on each ton in order to bale and store it. All that remained to be done was its transportation to a warehouse. It was already in the constructive possession of the association, so far as the bank was concerned. Therefore the attachment in behalf of the bank was without avail.

For the reasons stated by us, we recommend that the judgment of the Court of Civil Appeals be reversed and that of the district court affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.