**HILL v. CHILDERS et al.**

No. 3190.

Court of Civil Appeals of Texas.

Waco.

April 29, 1954.

Rehearing Denied May 27, 1954.

Robert G. Carter, Marlin, for appellant.

Dodson & Reagen, Marlin, for appellees.

HALE, Justice.

Appellees sued appellant and W. A. Brian for $2400 with 6% interest from June 1, 1952. As grounds of the recovery sought, they alleged in substance that the defendants had agreed to purchase from them their interest in certain oil well equipment, and did purchase the same, agreeing to pay therefor the sum of $2400 but that they had failed and refused to pay the agreed purchase price; and, in the alternative, that the defendants took charge of the property, converted the same to their own use, and continued thereafter to use the same, to their damage in the sum aforesaid. The case was tried before a jury. During the trial, the parties stipulated that the reasonable market value of appellees' interest in the equipment was $2400.

Upon the conclusion of the evidence, the court submitted three special issues to the jury. In answer to the questions submitted, the jury found as follows: (1) "That on or about the 1st day of June, 1952, R. L. Hill agreed to purchase for himself the interest of R. C. Childers and Associates in the oil well equipment described in plaintiffs' petition, and to pay therefor the sum of $2400.-00"; (2) "That R. L. Hill, on or about the 1st day of June, 1952, agreed to have a Bill of Sale covering the property involved in this suit prepared and send same to R. C. Childers with a check for $2400.00 with instructions to R. C. Childers to cash same when he secured the signature of all the owners of said property on said Bill of Sale"; and (3) "That R. L. Hill's offer to purchase the property described was not contingent upon record title to said property being good in plaintiffs to this cause."

In due time, appellees filed their motion for judgment on the verdict of the jury and the undisputed evidence for the amount of the recovery sought by them. Appellant likewise filed his motion for judgment on the verdict and undisputed evidence in his favor, denying any recovery to appellees against him, on the ground that the correct measure of appellees' damages, under the verdict and evidence, was the difference between the contract price for the property and its market value at the time and place of delivery. The court overruled the motion of appellant for judgment and rendered judgment against him and in favor of appellees for the sum of $2612.80. In his motion for new trial, appellant says, among other things, as follows:

"The Court erred in applying the wrong measure of damages in this cause, since the uncontroverted evidence showed that defendant offered to purchase the property in question and refused to consummate the sale; and the correct measure of damages which should have been applied was the difference between the contract price of the property, which was $2400.00, and the market or current price at the time or times when the property ought to have been accepted, which was agreed to be $2400.00."

Although appellant predicates his appeal upon three points of error, they are grouped and presented together and each is germane to the ground in his motion for new trial which we have quoted above. As we understand appellant's brief, he does not question the sufficiency of the pleadings, evidence and findings of the jury to establish the existence of a valid and enforceable contract between himself and appellees relating to the purchase and sale of appellees' interest in the equipment described in their petition, but he says the purchase and sale was not completed and that the contract relating to the same was an executory contract and hence he insists that appellees sustained no recoverable damages as a result of his breach of the contract.

We recognize the general rule, as asserted by appellant, that the legal measure of damages recoverable for the breach of an executory contract relating to the purchase and sale of personal property is the difference between the agreed contract price and the reasonable market value of the property at the time and place the same is to be delivered. However, we do not think this general rule is of controlling effect in its application to the material facts of this case.

The evidence shows that appellant and W. A. Brian were the owners of an oil and gas lease covering 147.8 acres of land in Falls County. On December 16, 1950, they entered into a written contract with R. C. Childers, who was acting as trustee for the appellees herein, by the terms of which they conveyed to Childers and his associates an undivided ½ working interest in the west 67.8 acres of their leasehold, subject to the provisions therein set forth. This contract provided, among other things, that Childers and his associates would prosecute certain drilling operations for oil on the 67.8 acre tract within the times and in the manner therein specified, that they should furnish all pumps, pipe, tanks and equipment for the drilling operations, that they should have the right to be in full charge of such operations and that "all salvage from said wells brought in as producers shall be owned equally by the parties hereto."

The evidence further shows that Childers, as the managing partner for himself and his associates, purchased the pumps, pipe, tanks and equipment necessary to conduct the drilling operations covered by his written contract with appellant and Brian. The first well drilled to completion under the contract produced oil in small quantities for about two months and then it went "dead." The second well drilled was a dry hole. After drilling the second well Childers and his associates ceased drilling operations as they had a right under their written contract to do.

Appellant testified in effect that after Childers and his associates had ceased drilling operations on the 67.8 acres, he and Brian decided to drill another well on their leasehold. Appellant then made a trip from Marlin to East Texas where Childers and his associates reside, for the purpose of buying their interest in the equipment in controversy. Although there is some conflict between the testimony of appellant and Childers as to the conversations which they had at that time, each of them say they reached an agreement with respect to the purchase and sale of the property and that the agreed purchase price was $2400.

The undisputed evidence shows that after appellant returned to Marlin he took possession of the equipment, used the same in his drilling operations and that the equipment was on the leased premises in the possession of appellant at the time of trial. However, appellant did not prepare or send any bill of sale covering the property to Childers and he did not send any check to Childers and he has not paid anything to Childers for the use or purchase of the property. On August 6, 1952, Childers signed and forwarded to appellant a bill of sale covering the equipment with a draft attached for the agreed purchase price but the draft was returned unpaid. Childers testified that he did not see or hear from appellant at any time after they had entered into the verbal contract of purchase and sale until the case was tried on November 12, 1953.

As we view the record in this cause, appellant's agreement to purchase the equipment in dispute for $2400 was intended to evidence and did evidence a completed contract of sale as distinguished from an executory contract to sell in the future and as a result thereof the title to whatever interest appellees might have had in the equipment passed to appellant. In the early case of Cleveland v. Williams, 29 Tex. 204, 94 Am.Dec. 274, the Supreme Court of Texas said: "By the common law, if the seller make a proposition, and the buyer accept, and the goods are in possession of the seller, and nothing remains to be done to identify them or in any way prepare them for delivery, the sale is complete, and the property in the goods passes at once." The rule thus announced has been quoted and applied in numerous subsequent decisions and we think it is of controlling effect in its application to the facts of this case. See: 37 Tex.Jur. p. 445, Sec. 201; 46 Am. Jur. p. 586, Sec. 414; 77 C.J.S., Sales, § 248, page 1032; Hopkins v. Partridge, 71 Tex. 606, 10 S.W. 214; Owens v. Clark, 78 Tex. 547, 15 S.W. 101; Irvin v. Edwards, 92 Tex. 258, 47 S.W. 719; Farmers' Rice Milling Co., Inc., v. Standard Rice Co., Tex.Com.App., 276 S.W. 904; Moffitt v. Hieby, 149 Tex. 161, 229 S.W.2d 1005.

The equipment which appellees bought and placed on the 67.8 acre tract under their written contract dated December 16, 1950, was on that tract and was, therefore, in their possession at the time when the verbal contract of purchase and sale was entered into. Appellant was familiar with the equipment and knew at the time he agreed to purchase the same that nothing remained to be done in order to identify it or prepare it for delivery to him. He admits that he went to Longview for the purpose of purchasing the interest of appellees in the equipment and that he thereafter took possession of the same and exercised dominion and control over it. A bill of sale was not necessary to pass to him whatever right, title or interest appellees might have had in and to the property, and we do not think his failure to send a bill of sale to Childers or

to pay the purchase price agreed upon operated to change his agreement into an executory contract to purchase the property in the future. It appears to us that he bought the property and that he is legally liable to appellees for the amount of the purchase price agreed upon.

But, if it could be said that appellant's verbal agreement was only an executory contract to buy which he refused to consummate, then his conduct in taking possession of the property under the circumstances shown by the evidence before us was wrongful and amounted to a conversion of appellees' interest therein to their damage in the amount for which judgment was rendered.

Therefore, each of appellant's points is overruled and the judgment of the court below is affirmed.