PERRY L. MOFFITT, ET AL. V. MRS. URSULA HIEBY.

No. A-2533. Decided May 17, 1950.
(229 S. W., 2d Series, 1005.)

162

*J. Russell Mount,* of Houston, and *Albert W. Taylor,* of McAllen, for petitioner, Perry L. Moffitt, et al.

It was error on the part of the trial court to refuse to permit the issue to go to the jury of whether there was a later contract which superseded and took the place of the written contract; also in refusing to permit the question to go to the jury of whether plaintiff, Mrs. Hieby, breached the implied duty to care for and water the orchard after the date of said contract, thus preventing the fruit from reaching its full maturity. Foley v. Storrie, 23 S. W. 442; Willeke v. Bailey, 144 Texas 157, 189 S. W. 2d 477; 17 C. J. S. 370.

*B. C. Mitchell,* of Alice, *L. A. Ashcroft, F. E. Butler* and *Charles E. Thompson,* all of McAllen, for petitioner, Mrs. Ursula Heiby.

The Court of Civil Appeals erred in sustaining the assignments which complained of the action of the trial court in refusing to submit the questions of plaintiff's negligence in refusing to water the orchard, etc.; and in not submitting the issue on the substitute contract. Shearman v. Poe, 9 S. W. 2d 762; Flow v. Friesen, 213 S. W. 2d 873; Chevallier v. Straham, 2 Texas 115; 12 Am. Jur., 939, sec. 369.

MR. JUSTICE HARVEY delivered the opinion of the Court.

Mrs. Ursula Hieby sued Perry L. Moffitt and Charles Elick, doing business as Green Valley Packers, and the United States Fidelity & Guaranty Company, as surety upon their bond, to recover damages for the nonperformance of a contract with reference to the sale and purchase of certain citrus fruit grown by Mrs. Hieby in her orchards located in Hidalgo County, Texas. A cross-action for damages was filed by Moffitt and Elick. At the close of the evidence the court granted plaintiff's motion to instruct the jury to render a verdict in her favor and against Moffitt and Elick on their cross-action, and upon such verdict judgment was rendered against the defendants for the sum of $2,866.27.

Upon appeal to the Court of Civil Appeals Moffitt, and others, presented the point that the trial court erred in not permitting the jury to pass upon their defense that a subsequent oral contract, dated March 12, 1948, superseded the earlier written contract of November 21, 1947. The next point urged in the Court of Civil Appeals by Moffitt, and others, was that the trial court erred in refusing to submit to the jury the question of whether Mrs. Hieby, the seller, breached her implied obligation to take proper care of and to water the orchard. Moffitt and Elick also pleaded that the trial court committed error in refusing to submit to the jury the question of whether or not the citrus fruit was damaged by an Act of God, which was alleged to have been a windstorm on December 2, 1947. The Court of Civil Appeals reversed and remanded the judgment of the trial court, holding that the failure of the trial court to submit to the jury the question of whether Mrs. Hieby breached her implied obligation to care for and water the orchards, as well as the failure to submit to the jury the question of whether or not the fruit was damaged by an Act of God, was reversible error. That court also held that the trial court was correct in not submitting an issue to the jury as to whether or not there was a subsequent new contract made by the parties in lieu of the original written agreement. 225 S. W. 2d 441.

The contract sued upon was as follows:

"Bought of Mrs. Ursula Hieby
Kind of Produce—Ruby Red Grapefruit
Location of Produce—No. 79 North ½—317 S½
319 Bentsen subd.
Agreed Price 70.00 per ton
Time of Payment—when picked
Probable Harvesting Date, Weather permitting, Feb. 1, 1948

Buyer not liable for damages caused by any Act of God prior to harvesting. Owner or Seller hereby warrants that the commodities covered by this contract are not mortgaged and seller hereby states that he has not been induced or persuaded to sell such commodities at the price herein named by any representation as to the market by buyer but has made his own independent investigation of same, and further that he has not been induced or persuaded by buyer to breach any contract heretofore executed by seller covering the same commodities. This contract, including the probable harvesting date, is subject to all regulations of State and Federal Departments and Laws.

Seller agrees that if harvesting is paid by buyer it is to be charged to seller's account.

Remarks: Clean trees last picking—phone 856 R

All terms of this agreement have been reduced to writing herein."

■ With respect to the first point presented in this Court by petitioner, Mrs. Ursula Hieby, that the Court of Civil Appeals erred in sustaining the assignment of error of respondents to the effect that the trial court erred in refusing to permit the question to go to the jury of whether petitioner breached an implied obligation properly to care for and water the orchards in question, to the extent that the citrus fruit did not have a normal development and growth and did not reach the size and quality required by respondents in their package fruit business, we are of the opinion that the contention of petitioner is correct. The agreement entered into by the parties appears on its face to be an executed contract. It definitely states that ruby red grapefruit on certain acreage was bought of the seller at an agreed price of $70.00 per ton, payment to be made when the fruit was picked. A provision is inserted in the contract that "all terms of this agreement have been reduced to writing herein." Prior to the execution of the contract by the seller and the buyer, negotiations had been carried on with reference to the sale of the grapefruit and an offer of $80.00 per ton for

the choice or ring picked fruit had been made to the seller by the buyer. Mrs. Hieby refused the offer of $80.00 per ton because she wanted to sell all of the fruit in the orchard instead of only the choice or premium grade. Consequently, the parties agreed on a sale price of $70.00 per ton and the buyer agreed to clean the orchards of all fruit. Thus, it is apparent that there was in contemplation of the parties to the contract that some of the fruit would be of an inferior kind. Too, it is significant that payment was based on tonnage rather than size of the grapefruit. Pursuant to the contract Moffitt and Elick, shortly after the contract was signed on November 21st, and by the 28th of the following month, which was December 1947, they ring pick the orchards five times. After that date no additional fruit was gathered by them. On March 24, 1948, Mrs. Hiebey, after notice to Moffitt and Elick, sold the fruit that was left in the orchards to other parties for the best price obtainable, gave Moffitt and Elick credit for what it brought, and filed suit against them for the difference between what she received and the contract price of $70.00 per ton. On the trial of the case there was evidence to the effect that by the end of January, 1948, which was conceded to be correct by Charles Elick, one of the defendants, that the price of grapefruit had dropped as much as fifty per cent under the contract price of $70.00 per ton. However, Moffitt and Elick stated that this drop in price did not affect them by reason of the fact that they had sold all the fruit for which they had contracted on the basis of prices prior to the decline of the market value of the grapefruit. It is to be noted that while testifying in the case Moffitt stated that when the grapefruit was purchased from Mrs. Hieby it was "up to our specifications."

Inasmuch as title to the grapefruit on the trees passed to the buyer as of the date of the contract, with a consequent delivery thereof made in the orchards, and there was nothing on the part of the seller that remained to be done in the matter, there was no implied obligation on the part of the seller to water the orchards or perform any other act with reference thereto. Had the parties so desired and had so agreed, it would have been quite easy for them to have inserted a stipulation in the contract to the effect that the seller should do whatever might have been deemed advisable under the circumstances with reference to the care to be taken of the orchards, as well as in regard to any other matters. This they did not do and there is no occasion for the courts to add to the contract as made by them.

■ The distinguishing characteristic in the case now under consideration is that the red grapefruit in the orchards was sold in bulk. The general rule, as quoted by Judge Coke of this court in the case of Cleveland v. Williams, 29 Texas 208, which is the rule laid down in Kent's Commentaries, Vol. 2, p. 496, is as follows:

"If anything remains to be done, as between the seller and buyer, before the goods are to be delivered, a present right of property does not attach in the buyer. This is a well-established principle in the doctrine of sales." In discussing this rule, Judge Coke comments:

"This reason does not exist where the subject-matter of the sale is designated and defined, as where the whole bulk is sold. It is true, it may have to be weighed, counted, or measured; but if this is to be done to enable the parties to make a settlement, and not for the purpose of completing the sale, the right passed to and vests in the purchaser. It is certainly correct, as laid down in the books, that when anything remains to be done by the seller, such as counting, weighing, or measuring, the title does not pass, when either of these operations is necessary in order to separate the goods from a larger mass, of which they form a part; but when the entire mass is sold and must be measured, simply with a view to the ascertainment of its price, for the purpose of a settlement, the better opinion, on principle and authority, is, that the title passes. By keeping the distinction between a specific and an indefinite commodity in view, it is believed that most of the cases upon this subject can be explained, and their apparent conflict reconciled." Citing cases.

In the case of Cleveland v. Williams, supra, an illustration is used which aptly points out the difference in sales where the present title to the property passes and those in which title does not pass, based upon whether or not something remains to be done in order to determine the consideration. We quote from that case:

"If a flock of sheep be sold at so much the head, and it is agreed that they shall be counted after the sale, in order to determine the entire price of the whole, the sale is valid and complete. But if a given number out of the whole are sold, no title is acquired by the purchaser until they are separated, and their identity thus ascertained and determined."

■ In view of the conclusion hereinabove reached that under the contract there was a completed sale of the red grapefruit, it is unnecessary to discuss the point as to whether the trial

court erred in not submitting to the jury an issue presenting the defense that the fruit was damaged by an Act of God. In passing, however, we may observe that had an issue been submitted to the jury inquiring if the orchards had been damaged by the windstorm as alleged, there would have been no basis for a judgment to be rendered thereon. While there is evidence in the record as to the amount of damage caused by an alleged failure to water the orchards by the owner thereof, there is none with respect to the degree or amount of damage caused by the wind.

■ Moffit and Elick present a point of error to the effect, in substance, that the Court of Civil Appeals erred in holding that the trial court was correct in not submitting to the jury their defense that there was an oral contract of March 12, 1948, which superseded and took the place of the earlier written contract of November 21, 1947. This point is overruled. The allegation under this defense pleaded was that the seller and the buyers, after having disagreed with respect to their respective rights under the contract, entered into a new oral agreement under the terms of which the buyers would pay the seller, Mrs. Hieby, $35.00 per ton for the grapefruit that remained to be gathered, and would clean the trees. The Court of Civil Appeals correctly held that there was no consideration shown for this new oral agreement; that it was conditioned upon certain things to be done by the buyers; and that there was no compliance with the obligations that were pleaded.

■ Petitioner, Mrs. Hieby, complains that the Court of Civil Appeals erred in holding that the instant case is governed by the provision of Art. 719a-1-3a, Vernon's Annotated Penal Code of Texas. We do not think such a construction can be given to the reference by the Court of Civil Appeals to the statute in question, which statement by the Court was that the evidence did not show that Mrs. Hieby had secured a Certificate of Maturity from the Texas Department of Agriculture prior to December 15, 1947, without which the grapefruit could not have been sold lawfully. It is quite obvious from its opinion that the Court of Civil Appeals did not give any weight to the matter referred to in deciding the case. Further, this alleged error is unimportant, since the statute does not apply to a sale of grapefruit on the trees.

The judgment of the Court of Civil Appeals is reversed and that of the district court is affirmed.

Opinion delivered May 17, 1950.

MR. JUSTICE HART dissenting. ·

The trial in the District Court was before a jury, but the court instructed a verdict in favor of the plaintiff. The Court of Civil Appeals has reversed and remanded the case for a new trial upon the ground that fact issues should have been submitted to the jury. 225 S. W. 2d 441. In order to sustain her position that the District Court correctly instructed a verdict in her favor, Mrs. Hieby, who was the plaintiff in the District Court, must show that the evidence, when considered most favorably to the defendants, raised no substantial conflict on any issue material to the grounds of recovery or defense. Stevens v. Karr, 119 Texas 479, 33 S. W. 2d 725, 41 Tex. Jur. "Trial-Civil Cases," Sec. 171.

The defendants in their answer alleged that the plaintiff had the implied obligation to properly care for and water the orchards so as to bring about a normal development and growth of the fruit; that the plaintiff breached that obligation by failing to care for and water the orchards with the result that only about one-half or less of the fruit in the orchards reached the proper size by the latter part of December, 1947, and that at least two-thirds of the fruit in the orchards was small and wholly unsuited to the purpose for which the defendants had contracted to purchase it. The defendants further alleged that as a result of the neglect of the orchards by the plaintiff large amounts of the fruit were more severely damaged by destructive winds which struck said orchards in the latter part of November or early in December, 1947, than they would have been damaged had the trees been in good condition and properly cared for. The defendants further alleged that they entered into the contract of November 21, 1947, with the purpose of obtaining premium sized fruit for which they agreed to pay a premium price, since the defendants were in the gift package fruit business; and that the plaintiff was fully aware of these facts. The defendants pleaded that the breach of the implied obligation of the plaintiff to care for the orchards, resulting in the failure of the fruit to reach normal or full size, was a material breach of contract which released the defendants from the obligation to harvest and pay for the fruit in the plaintiff's orchards.

The same facts substantially were alleged by the defendants as their basis for a cross-action against the plaintiff for breach

of her contract. The defendants asserted that they had been damaged in the sum of $1,440.

The evidence on the issues of fact raised by these pleadings was sharply conflicting. However, when the evidence is considered most favorably to the defendants, as we must consider it when determining whether the District Court correctly instructed a verdict in favor of the plaintiff, the record shows that substantial evidence was offered by the defendants to sustain their contentions. Both of the individual defendants testified, and their testimony in material respects was supported by the evidence of third parties. This evidence in effect was that at the time the contract was entered into, the defendants told the plaintiff that they were in the package fruit business and they needed premium fruit; that some of the fruit had not fully developed when the contract was signed; but that with normal care the fruit would have matured before the time for harvesting expired; that shortly after the contract was signed the defendants inspected the orchards and found that they were dry and needed water; that the month of December is a critical month in the development of the fruit, and the orchards commonly need watering during that time; that the plaintiff was requested on several different occasions by the defendants to water the orchards so that the fruit would "size up" or reach a normal growth; that the plaintiff failed to comply with these requests because it would involve expense to her and she did not water the orchards until the following spring; that in December a destructive dry wind severely damaged the plaintiff's orchards, defoliating a large portion of the trees and causing an abnormal portion of grapefruit to fall to the ground, averaging about one box per tree; that as a result of this wind and the lack of water the fruit remained small and did not develop normally and some of the fruit was soft and scarred; that orchards owned by other persons, which were properly watered, did not suffer this damage; that the defendants picked the fruit that had properly developed, but that they did not pick about two-thirds of the fruit because it had not properly developed and could not be used by them in their business; that the defendants notified the plaintiff that they could not take the remaining grapefruit because for lack of water the fruit was of no value to them; that the defendants had contracted to sell all of the fruit which they had expected to gather from the plaintiff's orchards for a price which would have brought them a substantial profit, which they lost by reason of plaintiff's failure to water and properly care for the orchards.

Much of the evidence offered by the defendants was contradicted by the plaintiff and by other witnesses she produced, who testified in effect that the plaintiff gave the orchards the proper amount of water; that the December wind did not damage the orchards materially; and that the fruit was of normal size and reached normal development. In other words, the record is such that issues of fact were presented upon which a verdict for either the plaintiff or defendants could be sustained by the evidence.

The question remains, however, whether these issues of fact were material. The District Court took the view that under the pleading and evidence, as a matter of law, there was no obligation on the seller to continue to water or otherwise care for the orchards until the time when the grapefruit could be harvested by the buyers.

The contract which has been quoted in the majority opinion does not contain any express agreement concerning the seller's obligation to care for the orchards to see that the fruit would develop normally. If this obligation exists it must be one which is implied in fact from all other facts and circumstances shown by the record. As this court said in Danciger Oil & Refining Company of Texas v. Powell, 137 Texas 484, 154 S. W. 2d 632, 635, "covenants will be implied in fact when necessary to give effect to the actual intention of the parties as reflected by the contract or conveyance as construed in its entirety in the light of the circumstances under which it was made and the purposes sought to be accomplished thereby."

Assuming the facts to be as pleaded and testified to by the defendants and their witnesses, an obligation should be implied in fact that the seller would, after the date of the contract, with reasonable diligence and prudence continue to water and otherwise properly care for the orchards so that the fruit would attain the size and quality which would normally be expected. Otherwise, it seems apparent that the intention of the parties would not be accomplished, but on the other hand, would be defeated. The contract discloses on its face that the buyer would be permitted a period of more than two months in which to gather the fruit and that the seller would pay the expense of harvesting. Aside from their right to enter the orchards for the purpose of gathering the fruit, the buyers were given no control over the orchards and it would follow that if the trees were to be watered and otherwise cared for this would have to be done by the seller. Regardless of whether, as a matter of law, the title to the grapefruit had passed to the buyers, the

seller, since she remained in charge of the orchards, should be under an obligation implied in fact (assuming the defendants' testimony to be true) to care for the orchards so that the fruit would normally develop and not be rendered unfit for the purposes for which the defendants were buying it.

The foregoing conclusion is supported by the general principles regarding implied obligations, which are set forth in the case of Danciger Oil & Refinery Company of Texas v. Powell, supra. In at least one other jurisdiction the same conclusion was reached in a case involving a similar factual situation. In Summers Fiber Company v. Walker, 33 Ky. L. 153, 109 S. W. 883, the contract provided that "the party of the first part has this day sold to the party of the second party forty-five and 21/100 net acres of hemp at $36.00 per acre." The contract provided that the seller should haul the hemp to a place designated by the buyer, but made no express provision regarding the care of the hemp until it should be delivered to the buyer. In a suit brought by the seller, the buyer asserted damages which it claimed resulted from the careless handling of the hemp by the seller and failure to give it proper attention so that the hemp was unsuited for the purpose for which it was bought. The court held that there was an implied obligation on the part of the seller to care for the hemp in a careful and prudent manner: (109 S. W. at page 885)

"At the very outset, it may be remarked that, although the contract did not provide that the hemp should be shocked, taken care of, and stacked in a careful and prudent manner, yet it was nevertheless the duty of Walker to have done this. The contract implied that he would care for the hemp in the usual and customary manner. This was evidently contemplated by the parties, and may be considered as much a part of the contract as if expressly stipulated in it."

No other cases have been found which contain facts closely similar to those in the case before us, but a number of cases are cited in the opinion of the Court of Civil Appeals which sustain the general proposition that in contracts involving sales of fruit and other personal property, as well as in contracts of other kinds, an obligation will be implied in fact when it is not inconsistent with the express written provisions of the contract, and when the implication is reasonably necessary to carry out the intention of the parties as shown by the written contract and all other facts and circumstances in the case. In my opinion, in this case the pleadings and evidence of the defendants presented issues of fact which should have been presented to the

jury for their decision and should not have been decided by the trial court as a matter of law. I therefore think that the judgment of the Court of Civil Appeals, reversing and remanding the cause for a new trial, should be affirmed.

Opinion delivered May 17, 1950.

No motion for rehearing filed.