James A. McKINNEY, Appellant,

v.

FLATO BROTHERS, INC., Appellee.

No. 175.

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 16, 1965.

John A. Waller, Corpus Christi, for appellant on appeal only.

Charles A. Bonniwell of Auforth & Bonniwell, Corpus Christi, for appellee.

GREEN, Chief Justice.

Appellee Flato Bros., Inc., filed suit against Merle Clapp and appellant James A. McKinney on the balance alleged to be owing on a promissory note executed by them on December 19, 1960. Service of citation was not had on Clapp, who did not appear or file any pleadings, and after a trial before the court without a jury, judgment was rendered for appellee against appellant in the sum of $3,194.30, plus attorney fees of $319.43, or a total of $3,513.73.

There is no order in the record disposing of the defendant Clapp. On the authority of Youngstown Sheet & Tube Co. v. Penn, Tex.Sup.Ct., 363 S.W.2d 230, and

Mabry v. Lee, Tex.Civ.App., 319 S.W.2d 125, writ ref., the case stands as if there had been a discontinuance as to Clapp, and the judgment is to be regarded as final for the purposes of appeal.

By written agreement entered into December 19, 1960, Flato Brothers, Inc., sold to Merle L. Clapp and James A. McKinney, as partners, a business theretofore conducted by Flato in Corpus Christi under the name of Central Appliance Service Company for the consideration of $1,680.00 cash, and a promissory note signed by Clapp and McKinney in the sum of $4,820.00, payable, interest included, in 24 monthly installments of $224.93 each. Payment of the note was secured by a chattel mortgage executed by Clapp and McKinney on automotive equipment, office equipment and shop and warehouse equipment set out in detail in the mortgage as Exhibit A.

Appellant's first three points are all directed at the alleged error of the trial court in failing to give credit on the note of an amount of $1,242.00 admittedly received by appellee as proceeds under a policy insuring the personalty covered by the chattel mortgage against theft; and the further amount of $851.00 admittedly received by appellee from the sale of personalty described in the mortgage as security for the note. It is further appellant's contention, in its third point, that there is no evidence to sustain a judgment for the amount of $3,513.73, since the evidence of appellee's witness was inconclusive, obscure and uncertain as to the exact amount of money obtained by appellee from the sale of personalty securing the note which should have been but was not credited on the note indebtedness.

Appellee replies that the $1,242.00 theft insurance proceeds and the sums received for the sales of the mortgaged personalty were properly applied to other indebtedness owing appellee by appellant, or the partnership of appellant and Clapp, also secured by this same mortgaged property, and that the evidence was sufficient to justify the judgment of the court.

Included in the provisions of the mortgage is the following:

"6. This chattel mortgage is to fulfill the conditions and obligations of an agreement entered into on even date hereof with Flato Brothers, Inc., for the purchase of Central Appliance Service Company and attached hereto as Exhibit B, and made a part hereof for all purposes."

The written sales agreement attached to the mortgage contains among other provisions the following:

"2. Buyers have assumed the payment of and hereby agree to pay all sums due or to become due upon those certain notes, obligations and accounts of Flato Brothers, Inc. heretofore incurred by or in the name of Central Appliance Service Company which are listed and described in Exhibit A attached hereto.

3. Buyers hereby assume all of the obligations and duties of the lessee or tenant and agree to pay all sums due or to become due under that certain lease from Guaranty Title and Trust Company as lessor to Flato Brothers, Inc., as lessee, or tenant, dated 31, July 1959 and covering the premises occupied as the place of business of Central Appliance Service Company at 3919 S. Port, Corpus Christi, Texas.

4. Buyers will hold Seller wholly harmless from any and all liability upon all obligations, liabilities and contracts expressly assumed by Buyers as well as all liabilities hereinafter incurred by Buyers in the operation of Central Appliance Service Company.

5. The obligations of Buyers pursuant to this Agreement are secured by a chattel mortgage in favor of Seller of even date herewith upon the prop-

erty listed in Exhibit B attached hereto."

Shortly after the contract of sale, note and mortgage were executed, appellee assigned the note, with recourse, to Mercantile National Bank, receiving $4,820.00 therefor. Payments made to the bank by the makers of the note reduced the amount due thereon, by April, 1962, to $3,194.30, at which time, due to default in payments by Clapp and appellant, the bank called upon appellee to make good on its endorsement. From April 1, 1962, to January, 1964, appellee made payments to the bank, paying altogether $3,194.30, in full payment of its obligation to the bank.

In the meantime, Clapp and McKinney had dissolved the partnership, and notified appellee. They stopped making the rent payments, liability for which they assumed as stated in paragraph 3 of the sales contract, quoted above, and beginning with December, 1961, appellee commenced making such payments.

In April, 1962, a theft of a portion of the mortgaged property occurred, for which appellee collected as insurance $1,242.00. Appellee took over the business after it found the building abandoned in April, 1962, and as a result of sales of the mortgaged personalty, received the sums of $851.00, $525.00, $20.00, and $20.00. These sales, plus the insurance money, totaled $2,658.00 received by appellee from the mortgaged chattels, which appellee was required to apply on the indebtedness of Clapp and McKinney accruing as a result of the note, mortgage and sales contract.

The witness Schmidt, appellees secretary-treasurer, testified that his company had only one account on its books with Central Appliance Service Company. When payments were made by appellee to the bank on the note, or the Guaranty Title and Trust Company on the rent contract, these sums were charged against the appliance company on this account. When credits were received, as the $1,242.00 insurance money, and the amounts received from the sales of the mortgaged property, they were credited to the same account.

In this connection, Schmidt testified on cross-examination as follows:

"Q * * * Besides the $1,242.00 Flato Brothers got out of the theft insurance, how much other money have they received as a result of the sale of the assets of the business?

A I notice on the ledger account we credited $850.00.

Q You credited the rent account, is that correct?

A No, I credited Central Appliance Service Company account. We had only one account when we were making payments to the bank or Guaranty Title, they were credited all to one account, Central Appliance Service Company. And we received $851.00 one time, $525.00 another time, $20.00 once, $20.00 again.

Q How did you determine what portion of those credits should have been credited to the note, or should have been credited to the open account?

A I didn't credit them to anything but their account. When I made a payment to the bank, I charged that to their account, when I made a payment to Guaranty Title I charged their account, and we received credits, I credited their account. It doesn't really make any difference.

Q You can't tell from your records what was credited on the note account, and what was credited on the other account.

A That's true. I can't see it makes any difference.

Q It is your sworn testimony before the Court you can't tell.

A No.

Q So your testimony to Mr. Bonniwell that all credits and offsets due on the note had been credited, that testimony was actually in error, you don't know whether it was or not.

A To the best of my knowledge, I gave them credit to everything they were entitled to.

Q But not on the note.

A Well okay, you divide it any way you want to.

Q I am asking you, you can't testify where—

A I don't know exactly what dollar goes where.

Q You don't know whether or not all the offsets and credits were given on the note, do you?

A All right, I don't know."

The only items of indebtedness testified to by Schmidt as being included within this account were payments on the note to the bank and of rent to the original lessor. There was no evidence that Clapp or appellant had defaulted in any other requirement of the contract. The rent payments made by appellee after default started in December, 1961, the business was taken over by appellee in April, 1962, and since the lease was not in evidence, and there was no testimony as to its duration, or the amount paid by appellee as rent on appellant's account, there is an entire absence of evidence that appellee applied the total amount of $2,658.00 on rental.

This was not a suit on the account between appellee and the appliance service company. It was confined by the pleadings to a suit to recover on a promissory note. The witness did not testify that these receipts were credited to the rental. They were credited, so he says, to the one running account which included payments on the note by appellee to the bank, as well as the rental payments by appellee to Guaranty Title. Since appellee received by its own admission the sum of $2,658.00 from the property mortgaged to secure the indebtedness, and since appellant received no credit on the note indebtedness for any of this sum, it was the burden of appellee to prove that this amount had been applied specifically to other items of indebtedness secured by the property, leaving as still owing the amount of the note. Pyle v. Byrne, Tex. Civ.App., 331 S.W.2d 507, writ ref. n. r. e. This appellee failed to establish, and there is no evidence from which we could assume any implied finding to that effect.

Under the facts testified to by Schmidt, we feel that the rule should apply as set forth in Aetna Casualty & Surety Co. v. Hawn Lumber Co., 128 Tex. 296, 97 S.W. 2d 460, 465:

"It is evident there was no specific application of payments to any particular part of the account or any particular estimate, but there was a crediting of payments on the account as a whole. Unquestionably, we think the law made the application to the oldest unpaid portion of the account."

See also, Willis v. McIntyre, 70 Tex. 34, 7 S.W. 594; Jamison v. Alvarado Compress & Warehouse Co., 45 Tex.Civ.App. 263, 99 S.W. 1053; Pyle v. Byrne, Tex.Civ.App., supra.

Except for possibly five monthly payments of $200.00 each for rental from December, 1961, through April, 1962, there is no evidence of any other charge against appellant on the account prior to those for the monthly payments on the note made by appellee to the bank.

We hold that in view of the admitted receipt by appellee of the sums as herein stated from sale and other disposition of the mortgaged chattels, and the failure to allow proper credit as payments on the note of any portion of such sums under the circumstances noted in this opinion, there was no evidence to support the judgment as rendered, and that the trial court erred to

appellant's prejudice in decreeing recovery for the amount of the judgment.

We are unable to determine from the record the amount which could legally be credited by appellee to indebtedness owed by appellant under the sales contract other than the note. In the interest of justice, we feel that the judgment should be reversed and remanded.

By his fourth and fifth points, appellant claims error in the trial court's sustaining appellee's special exception pertaining to appellant's affirmative pleading that the execution of a second note between Clapp and the bank, while the latter was the holder of the original note, was a cancellation and novation releasing appellant from any liability on the note sued on.

Appellant, in his first amended answer, had pleaded among other defenses that the note in litigation was not legally sufficient to form the basis of a suit because it was cancelled, nullified, superseded and held for naught when Clapp, a co-signer, had, with the permission and consent of the Mercantile National Bank executed a new note in lieu thereof, which had been accepted by the bank. Appellee filed a special exception to this pleading, alleging that it failed to allege any consideration; it failed to allege that plaintiff had released McKinney from liability on the note, it failed to allege that the discharge of the note was contemporaneous with the execution of the alleged new note; it failed to allege that it was the intention of all parties to the note in suit that same should be extinguished, and that the allegations were insufficient in law.

At a pre-trial hearing, regularly called by the trial court and of which appellant's attorney had timely notice, but which was not attended by him, the above special exception was sustained, and the defendant (appellant) was granted leave to amend. A copy of the court's order was received by said lawyer one full week before the case was called for trial.

■ A trial court has a large discretion in ruling upon special exceptions, and his ruling will not be disturbed in the absence of a showing of abuse of such discretion or injury. Jones v. Alvin State Bank, Tex. Civ.App., 332 S.W.2d 124; Weiler v. Weiler, Tex.Civ.App., 336 S.W.2d 454; Southern Underwriters v. Hodges, Tex. Civ.App., 141 S.W.2d 707, writ ref.; City of Abilene v. Jones, Tex.Civ.App., 355 S.W. 2d 597.

■ The necessary elements of a sufficient pleading of novation, are (1) a previous valid obligation; (2) the agreement of all the parties to a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new one. Money v. Dameron, Tex.Civ.App., 70 S.W.2d 291, writ ref. The consideration for the new contract must be both alleged and proved. Moffitt v. Hieby, Tex.Civ.App., 225 S.W. 2d 441, rev. by Supreme Court on other grounds, but expressly approved on this point, 149 Tex. 161, 229 S.W.2d 1005, syl. (5).

■ Appellant's plea fell short on some, if not all of these requirements. The court did not abuse his discretion in sustaining the exception and offering appellant leave to amend. Had appellant desired to plead specifically the defense of cancellation (Art. 5939, Sec. 119, Vernon's Ann.Tex.Civ.St.) he was given the opportunity of doing so by amendment. Appellant did not amend before trial, nor ask leave to amend during trial. Points 4 and 5 are overruled.

Reversed and remanded.