United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 1, 2004**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 04-30219
Summary Calendar

---

ELDER OFFSHORE LEASING, INC.,

Plaintiff-
Intervenor Defendant-
Appellee,

VERSUS

BOLIVARIAN REPUBLIC OF VENEZUELA,

Intervenor Plaintiff-
Appellant,

VERSUS

SAFE HAVEN ENTERPRISES, INC., ET AL.,

Defendants.

---

Appeal from the United States District Court
for the Western District of Louisiana
m 02-CV-1685
m 02-CV-2517
m 02-CV-1274

---

Before, DAVIS, SMITH, and DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

The Bolivarian Republic of Venezuela ("Venezuela") brings this interlocutory appeal challenging the district court's determination that title to disputed property never passed from Elder Offshore Leasing, Inc. ("Elder"). Because the contractual provision on which Venezuela relies is not operative in the current dispute, title never passed, and we affirm.

I.

Requiring new living quarters for the Simon Bolivar Naval Base on Isla de Aves,[1] Venezuela contracted to have new living quarters, or "modules," constructed for the base. To build the modules (three-story dormitory-type structures with work areas, residential quarters, recreations areas, kitchens, and a rooftop heliport), Venezuela contracted with Totalmar, a Venezuelan corporation, which in turn contracted with Elder to procure and refurbish the modules. The Venezuela/Totalmar contract provided that Totalmar would prepare the island site and purchase, transport, and install the modules, while under the Totalmar/Elder contract, Elder would procure the modules and renovate them to Venezuela's specifications.

Although Venezuela paid Totalmar, Totalmar failed to pay Elder for all its work, so Elder did not pay its subcontractors. Consequently, multiple civil actions were instituted in Louisiana (where the construction was taking place). Elder sued Safe Haven Enterprises ("Safe Haven"), which is alleged by Elder to be a joint venturer with Elder in the construction of the modules. Safe Haven responded by filing a lien against the modules and sued to enforce that lien. Safe Haven's case was removed to federal court and consolidated with Elder's original action against Safe Haven. At that point, numerous subcontractors and lienholders intervened in the federal action, as did Venezuela.

Venezuela claims that title to the modules has passed to it under the Elder/Totalmar contract and that sovereign immunity protects the property from attachment. The Totalmar/Elder contract provides that title passes on the earliest occurrence of any three possibilities: "(a) appropriation of the Work or any part thereof to the Order; or (b) payment for the Work; or (c) delivery of the Work by Contractor at the specified delivery point." Because neither party contends that payment was made or that delivery occurred,[2] the sole issue is the meaning and application of "appropriation of the Work or any part thereof to the Order."

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Isla de Aves is Venezuela's furthest outpost in the Caribbean Sea. The naval base is used for hydrographic, cartological, and meteorological purposes, and Venezuela needs the modules to maintain its presence on the island and therefore continue to claim sovereignty over it.

[2] Although the modules were eventually moved to Isla de Aves, we operate under the legal fiction that they remain at their manufacturing location in Louisiana. Pursuant to a Joint Stipulation entered into by Elder, Venezuela, and the other lienholders, Venezuela posted a cash bond in exchange for immediate possession. By the terms of the Joint Stipulation, the cash bonds will pay to Elder and the lienholders unless the court rules that Venezuela is the owner of the modules and sovereign immunity protects them from seizure.

At a bench trial, the district court adjudicated the current ownership of the modules and reserved the disposition of the remaining claims for another day. On considering the evidence and arguments of counsel, the court held that, under the operative contractual provisions, title never passed to Venezuela, but remained with Elder. In its oral ruling, the court reasoned that the disputed contractual provision exists to protect the seller, and therefore the court disagreed with Venezuela's reading of the contract. The ruling was certified for appeal under Federal Rule of Civil Procedure 54(b). *See Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1220 (5th Cir. 1990) (per curiam) (en banc).

## II.

We review the interpretation of a contract, which is a conclusion of law, *de novo*. *See City of New Orleans v. Mun. Admin. Servs., Inc.,* 376 F.3d 501, 506 (5th Cir. 2004). This dispute is governed by the terms of the contractSSspecifically, the above-described "appropriate the Work . . . to the Order" provision. It is our responsibility to attach meaning to this phrase as intended by the parties.[3]

Luckily, some of the terms within the provision are defined by the contract. "Work" is defined as "the goods, services and/or equipment and documentation to be provided under the contract . . . ." "Order" is not specifically defined, but it is plain from the contract that it refers to Totalmar's order for the modules.[4] It is not apparent from the plain meaning of the contract, however, what the parties intended by agreeing that title passes on appropriation of the work to the order. We therefore look to interpretive guides outside the text of the contract.

Venezuela calls our attention to cases in which this court and others interpreted a similar phrase, *i.e.,* "appropriate goods to the contract." Although Venezuela contends that this difference in phrasing is insignificant, it is in fact quite illuminating. In the cases cited,[5] the goods at issue were fungible, and the contracts called for the sale of a specified quantity of those goods.

For example, in *Mitsubishi*, 735 F.2d at 165, we held that "when goods to be delivered by the seller to the buyer become segregated from other goods or *appropriated to the contract* so that the objects to be sold are readily identifiable, the same becomes executed, and at that time title to the goods passes to the buyer" (emphasis added). Therefore, the phrases "appropriating goods to a contract" and "appropriating work to an order" indicate the physical segregation, setting aside, or other identification of a subset of goods apart from a greater stock. Such an act, and the accompanying passage of title per contract, allow a seller to complete

---

[3] *See Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 822 (5th Cir. 2003) ("'When interpreting a contract, the question is what was the parties' intent, [because] courts are compelled to give effect to the parties' intentions'" (quoting *Pennzoil Co. v. FERC*, 645 F.2d 360, 388 (5th Cir. May 1981))).

[4] The parties do not dispute this.

[5] *See, e.g., Mitsubishi Int'l Corp. v. Clark Pipe & Supply Co.*, 735 F.2d 160, 165 (5th Cir. 1984); *Edgewood Co. v. Falkenhagen*, 92 So. 703 (La. 1922); *Collector of Revenue v. J.L. Richardson Co.,* 247 So. 2d 151, 156 (La. App. 4th Cir. 1971); *Texas Hay Ass'n v. Angleton State Bank*, 291 S.W. 846 (Tex. Comm'n App. 1927).

performance of a contract so as to be able to demand performance by the buyer or at least to pass risk of loss to the buyer.

It is obvious, from the context of the cases relied on by Venezuela, that this provision is not helpful to its case. Here, the "work" to be appropriated is not of the fungible nature that usually causes the seller to seek protection by allowing it to pass title and risk by identifying the goods to be sold. It is unreasonable to believe that Elder intended to agree to yield title to the modules, piece by piece, irrespective of payment, by utilizing a contractual provision that historically has been used to protect sellers.

This interpretation is bolstered further by the International Commercial Terms, or "Incoterms," which the parties agreed would apply to the contract where not in conflict with its express conditions. The Incoterms are a set of international rules for the interpretation of trade terms, published by the International Chamber of Commerce.

The only use of the phrase "appropriated to the contract" by the Incoterms indicates that a seller in an FOB contract[6] may choose to pass title to goods, by clearly setting them aside or identifying them where the specified vessel of shipment fails to arrive or is otherwise unable to accept shipment. That is, the seller can shift risk and title by taking affirmative steps to identify the specific, fungible goods it intends to sell. The Incoterms, therefore, indicate that the disputed contractual phrase exists to protect the seller by allowing it to shift risk at its prerogative by performing certain steps.

This interpretation makes the most sense and is in accord with that given by the courts in the cases cited by Venezuela.

Venezuela counters that Elder purchased used modules, brought them to the construction site, and thereby appropriated them to the contract. Subsequently, according to Venezuela, with the addition of each item Elder installed in the modules, those items too were appropriated to the order.

Unfortunately, Venezuela cannot point to any case in which this piece-by-piece formulation of appropriating work to an order has been applied. Instead, provisions of the sort at issue here are unanimously used in the context of fungible goods. The disputed provision therefore is of no moment here[7] and could not have effected passage of title.

The interpretation reached by the district court was therefore correct. Title to the modules never passed from Elder.

AFFIRMED.

_____

[6] An "FOB" contract is one in which the buyer assumes risk of loss upon the seller's shipment of the contracted-for goods.

[7] The inclusion of this inapplicable provision could be explained if the contract used was adopted from a previous contract dealing with an entirely different set of facts. Although the evidentiary record is not illuminating as to the provenance of the contract, Venezuela suggested, at oral argument in the district court, that the form used as the basis for this contract came from a previous transaction in which Elder was involved. If true, this would lend even further credence to the notion that the "appropriate work to the order" provision is not applicable here.