IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 22, 2008

Charles R. Fulbruge III
Clerk

No. 07-30732

ELDER OFFSHORE LEASING, INC.

Plaintiffs

V.

BOLIVARIAN REPUBLIC OF VENEZUELA

Intervenor Plaintiff - Appellant

V.

SAFE HAVEN ENTERPRISES, INC.

Defendant - Intervenor Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before GARZA, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

In this case we review the district court's determination that a litigant lacks standing. The district court granted a motion by Intervenor-Defendant-Appellee Safe Haven Enterprises ("SHE") to withdraw from the registry of the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

district court the remaining cash balance of a bond, executed by Intervenor-Plaintiff-Appellant Bolivarian Republic of Venezuela ("Venezuela"), holding that Venezuela lacked standing to oppose SHE's motion. Venezuela appealed. Concluding that Venezuela has standing to contest the merits of SHE's motion, we REVERSE and REMAND.

## Factual and Procedural History

In 2002 the Navy of Venezuela contracted with Consorcio Groupo Total Mar ("Total Mar") to construct and install living-quarter modules ("modules") on concrete platforms offshore of Venezuela. Total Mar, in turn, subcontracted with Elder Offshore Leasing, Inc. ("Elder") to construct the modules and ship them to Total Mar in Venezuela. Elder then subcontracted with SHE for the design and construction of the modules.

SHE had nearly completed the construction of the modules at a shipyard in Lake Arthur, Louisiana when a dispute arose between Elder and SHE. As a result, SHE ceased work on the modules, and Elder subsequently filed suit against SHE on August 7, 2002, in the Western District of Louisiana, alleging that SHE had breached its contract with Elder. In response, on August 8, 2002, SHE filed in the records of Jefferson Davis Parish a lien against the modules, and on November 19, 2002, SHE filed a petition to enforce its liens in the Thirty-First Judicial District Court for the Parish of Jefferson Davis. In response to SHE's petition, the Jefferson Davis Parish district court ordered that SHE's liens and privileges be recognized and that the modules be sequestered in Louisiana. Elder then removed SHE's action to federal court, where it was consolidated with Elder's suit.

On June 23, 2003, Venezuela intervened in the consolidated federal case as a matter of right pursuant to Federal Rule of Civil Procedure 24(a), seeking a declaratory judgment that Venezuela was the owner of the modules, claiming

sovereign immunity, and asserting other equitable and legal claims. A number of other parties also intervened to assert liens on the modules.

In order to reduce the delay in installing the modules, Venezuela moved for "an order allowing Venezuela to furnish bonds in lieu of the liens and sequestration[] [of the modules]."[1] After a hearing on Venzuela's motion, the district court issued an order authorizing all parties to file a joint stipulation including "the appropriate bonds and exhibits" necessary to allow Venezuela to remove the modules from Louisiana.[2] On September 16, 2003, all parties to the litigation, including Venezuela and SHE, entered the joint stipulation, agreeing that Venezuela would execute individual cash bond agreements with all of the lien holders, whereby Venezuela would agree to pay the claimed amounts upon satisfaction of certain conditions and the lien holders would agree to accept these bonds in lieu of their liens and claims on the modules.[3] To secure all the various bond agreements included within the joint stipulation, Venezuela deposited into the registry of the district court a total of $3.5 million, which the lien holders would be allowed to draw upon to satisfy their bond agreements.

All of the bond agreements between Venezuela and the lien holders, save that between Venezuela and SHE, accepted the validity of all asserted lien claims and conditioned bond payment solely upon entry of a final, non-appealable judgment that Venezuela did not own the modules. However, the stipulation between Venezuela and SHE divided SHE's claims into two categories.[5] With respect to one category, the "Stipulated Safe Haven Claim[s]" totaling $376,000, Venzuela and SHE agreed that SHE's claims were valid and

---

[1] See Record on Appeal (ROA) at 500.

[2] See ROA at 840.

[3] See ROA at 842-46.

[5] See ROA at 1693.

payable upon entry of a final, non-appealable judgment that Venezuela did not own the modules.[6] But with respect to the other category, the "Reserved Claims" totaling $261,750,[7] because Venezuela challenged the validity of SHE's claims, Venezuela and SHE agreed that payment of these claims required not only a final, non-appealable judgment that Venezuela did not own the modules but also a judgment establishing the validity of the Reserved Claims and their underlying liens and obligations.[8]

On February 19, 2004, the district court entered a final judgment decreeing that Elder, not Venezuela, legally owned the modules. Venezuela appealed the matter, and during the pendency of this appeal, the case was reassigned from one division of the district court to another. On December 1, 2004, a prior panel of this court affirmed the district court's judgment, see Elder Offshore Leasing, Inc. v. Bolivarian Republic of Venezuela, 116 F. App'x 541 (5th Cir. 2004), and the United States Supreme Court subsequently denied certiorari. See Elder Offshore Leasing, Inc. v. Bolivarian Republic of Venezuela, 544 U.S. 977 (2005).

Following the Supreme Court's denial of certiorari, the district court granted numerous motions for payment of various lien holders under the cash bonds,[9] and at this time SHE collected payment of $376,000 for the Stipulated

---

[6] See ROA 1694.

[7] See ROA 1694.

[8] Specifically, payment of the Reserved Claims was conditioned not only upon entry of a final, non-appealable judgment that Venezuela is not the owner of the modules but also upon entry of a final, non-appealable judgment that "(1) establishes the validity of the Reserved Claims [and] (2) establishes the validity of the Claim of Liens made in respect to the Reserved Claims." ROA 1696. Venezuela specifically "reserve[d] its right to assert defenses as to the validity of the [Reserved Claims]." ROA 1695.

[9] See, e.g., ROA at 2310, 2387, 2388, 2390-92.

Safe Haven Claims.[10]   However, SHE made no attempt to collect the funds allocable to the Reserved Claims, and  Elder and SHE continued to negotiate their respective rights to the funds remaining in the registry of the district court, which included the funds Venezuela had deposited to cover the Reserved Claims.[11]  To resolve these persisting issues the district court set a trial date for June 18, 2007; the district court also ordered that prior to trial "all parties to this litigation engage in mediation . . . ."[12]

In April of 2007, Elder and SHE reached a settlement agreement whereby Elder agreed not to oppose SHE's "motion to withdraw the sum of $338,560.00, which constitutes the principal balance of its lien";[13] however, this settlement agreement apparently neither included nor considered Venezuela's interest in some $261,750 of these funds, which were deposited to secure SHE's Reserved Claims and remained in the registry of the district court.  Thus, when SHE moved to withdraw the remainder of its cash bond,[14] Venezuela opposed the motion, asserting that SHE had not proven the validity of its Reserved Claims as required in the bond agreement between Venezuela and SHE.[15]  In reply to Venezuela's opposition, SHE asserted that Venezuela lacked standing to challenge the motion because the district court had previously declared that Venezuela was not the owner of the modules at the time the liens were filed. Agreeing with SHE, the district court held that Venezuela lacked standing to

---

[10] See ROA at 2402.

[11] See, e.g., ROA at 2014.

[12] ROA at 2428.

[13] ROA at 2452.

[14] See ROA at 2479.

[15] See ROA at 2497.

oppose SHE's motion and issued an order authorizing SHE to withdraw the remaining $338,560 from the court's registry.[16] Venezuela timely appealed.

## Discussion

We review questions of standing de novo. See Bonds v. Tandy, 457 F.3d 409, 411 (5th Cir. 2006); Pederson v. La. State Univ., 213 F.3d 858, 869 (5th Cir. 2000). "A question of standing raises the issue of whether the plaintiff is entitled to have the court decide the merits of the dispute or of particular issues. Standing is a jurisdictional requirement that focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." Pederson, 213 F.3d at 869 (quoting Cook v. Reno, 74 F.3d 97, 98-99 (5th Cir. 1996)).

Based on the record before us, we conclude that Venezuela was entitled to have the court decide the merits of its challenge to SHE's attempt to withdraw Reserved Claim funds from the registry of the district court. Here, Venezuela and SHE explicitly stipulated to Venezuela's right to challenge SHE's entitlement to the Reserved Claims,[17] and by agreeing that SHE could not collect the funds allocable to the Reserved Claims without a judgment establishing the validity of the Reserved Claims and the underlying claims of liens,[18] Venezuela and SHE effectively agreed to adjudicate the issue before the district court.

Despite these agreements between the parties, the district court refused to adjudicate this issue, ruling instead that Venezuela lacked standing because the pleadings in this case did not contain a challenge to SHE's attempt to withdraw

---

[16] See ROA at 2533, 2539.

[17] See ROA at 1695 ("Venezuela reserves its right to assert defenses as to the validity of the [Reserved Claims]").

[18] See ROA at 1696 (conditioning SHE's recovery of the Reserved Claims upon, inter alia, a judgment "(1) establish[ing] the validity of the Reserved Claims; and (2) establish[ing] the validity of the Claim of Liens made in respect of the Reserved Claims . . . .")

the funds allocable to the Reserved Claims.[19]  However, this conclusion falls into error by failing to consider the bond agreement between Venezuela and SHE and the joint stipulation, both of which demonstrate that Venezuela and SHE contemplated and consented to the district court's adjudication of SHE's entitlement to collect the funds allocable to the Reserved Claims.  Under Federal Rule of Civil Procedure 15(b)(2), "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."  In applying Rule 15(b)(2), this circuit has established that a stipulation between the parties functions as providing express consent to try an issue.  See, e.g., Emmons v. S. Pac. Transp. Co., 701 F.2d 1112, 1118-19 (5th Cir. 1983); Am. Standard Credit, Inc. v. Nat'l Cement Co., 643 F.2d 248, 257 n.4 (5th Cir. 1981); Nat G. Harrison Overseas Corp. v. Am. Tug Titan, 516 F.2d 89, 96 (5th Cir. 1975); 6A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1493 n.4 (2d ed. 2008).  Moreover, this court has held that even when neither the pleadings nor the pretrial order contain a claim, that claim may still proceed if the record contains sufficient evidence to convince the court that the parties consented to the adjudication of

---

[19] The district court reasoned as follows:

> SHE maintains that Venezuela has no standing to object to SHE's motion to withdraw the remaining principal amount that was in dispute between SHE and Elder. The Court agrees. The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues [citing Warth v. Seldin, 422 U.S. 490, 498 (1975)]. The Court has reviewed the numerous complaints, cross-claims, answers, and defenses and concludes that Venezuela never asserted any claim against SHE other than to be declared owner of the Modules and/or a declaration that the Modules were immune from attachment or seizure by creditors. This issue was decided in the Court's [judgment on] February 19, 2004, which as previously discussed is now a final and non-appealable judgment. Because Venezuela has not asserted any claims or defenses in this litigation as to the "Reserved Claims", it has no standing to assert any such claims now.

Elder Offshore Leasing, Inc. v. Safe Haven Enter., Inc., No. 02-1685, 2007 WL 1974331, at *2 (W.D.La. June 29, 2007).

the issue. See, e.g., Am. Standard Credit, 643 F.2d at 257 n.4 ("On appeal, [defendants] argue that neither [plaintiff's] pleadings nor the pretrial order included [the theory plaintiff later asserted]. While this is true, our review of the record convinces us that this issue . . . was tried by the consent of parties.").

Here, our review of the record shows that the parties stipulated that the validity of SHE's liens and thus entitlement to the funds allocable to the Reserved Claims was an issue to be determined before the district court in this case. Most explicitly, the bond agreement between Venezuela and SHE states that SHE may not collect the funds allocable to the Reserved Claims without an entry of final, non-appealable judgment on the validity of the Reserved Claims,[20] and this same bond agreement plainly reserves Venezuela's right to oppose SHE's withdrawal of the Reserved Claims funds if this condition is not met.[21] Further, unless the district court finds something that would otherwise prevent Venezuela from formally amending its pleadings to specifically challenge SHE's entitlement to the Reserved Claims, Venezuela will have the right to amend its complaint on remand. See Fed. R. Civ. P. 15(b)(2) ("A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.").

Accordingly, on the record presented for our review, we conclude that Venezuela has standing to challenge SHE's attempts to withdraw the funds allocable to the Reserved Claims. In so ruling, we intimate no view on the underlying merits of the matter. Accordingly, we REVERSE the district court's holding regarding Venezuela's standing and REMAND this matter for further proceedings consistent with this opinion.

---

[20] See ROA at 1696.

[21] See ROA at 1695.